### HUNT v. HUDGINS et ux.
### No. 2487.

Court of Civil Appeals of Texas. Waco.

Feb. 11, 1943.

J. Elwood Winters, of Fort Worth, for appellant.

Jackson & James, of Cleburne, for appellee.

TIREY, Justice.

Walter B. Hudgins and wife brought this suit on June 4, 1941, against Mrs. Burmah G. Hunt, a widow, seeking an injunction to restrain the defendant from molesting plaintiffs in any manner whatsoever and alleging various vexatious acts committed by defendant toward them as a basis for obtaining such relief. The court granted temporary writ of injunction without notice. Defendant filed her motion to dissolve, and thereafter the cause was tried on its merits and on the verdict of the jury, which was favorable to the plaintiffs (and the court having found "all other issues of fact made by the pleadings and the evidence * * * in favor of the plaintiffs"), the court found that the temporary writ should be made permanent and overruled defendant's motion to dissolve same, and permanently enjoined defendant from molesting plaintiffs in any manner whatsoever. Defendant has appealed.

The judgment of the trial court is assailed substantially on the grounds that (1) the court erred in its failure to let defendant fully develop the conduct and association of the plaintiff Walter B. Hudgins with the defendant prior to the time said Hudgins made a $1,200 settlement agree-

ment with defendant; and (2) "for the reason that the plaintiffs waived their right of recovery in this cause by not submitting to the jury the controlling issue of recovery, it being whether or not the conduct complained about in plaintiffs' petition was sufficient to intrude upon or interfere with plaintiffs' natural and private rights; such issue being controlling it could not be found by the court in plaintiffs' favor." We cannot agree with either of these contentions.

It is without dispute that Hudgins became acquainted with Mrs. Hunt in the Spring of 1937. The evidence is sufficient to support the inference that this acquaintanceship ripened into an illicit relation between them and as a result Mrs. Hunt became pregnant, and after she had been in pregnancy some five months she submitted to an abortion and as a result of such operation she suffered much physical and mental pain and incurred hospital and doctors' bills. Thereafter she placed a claim for damages against Mr. Hudgins in the hands of an attorney at Cleburne, which claim was fully settled by release agreement executed and delivered by Mrs. Hunt on December 28, 1938. The pertinent parts of this instrument are as follows:

"Whereas, the undersigned, Mrs. Burmah G. Hunt, a widow, of Dallas County, Texas, claims that she has suffered damages for physical and mental suffering at the hands of Walter B. Hudgins, of Cleburne, Johnson county, Texas, which damages were caused by the harsh, cruel and inhumane treatment of her by said Walter B. Hudgins, whom she claims has breached his agreement to bear the expense of medical and hospital treatment of her and to reimburse her for any and all expenses and damages borne by her; and

"Whereas, said Walter B. Hudgins, has at all times denied any liability whatever on his part for any of the wrongs, injuries, pains, suffering—physical or mental—suffered by the said Mrs. Burmah G. Hunt;

"Whereas, both parties hereto have compromised and settled all their bona fide disputes, claims and counter-claims, and have agreed that both parties should be absolved from any and all blame and/or liability for any wrongs, injuries, pains and/or damages which each may have suffered as the direct or indirect result of the actions, words and conduct of the respective parties.

"Therefore, in consideration of the foregoing premises and the further consideration of a certain sum of money cash in hand paid by Walter B. Hudgins to the undersigned, Mrs. Burmah G. Hunt, have released, remised and discharged, and by these presents do release, remise and discharge said Walter B. Hudgins, his heirs and legal representatives, forever, from any and all liability of whatever character for any and all claims, known or unknown, for damages for any and all physical and/or mental pains and suffering I have or may hereafter suffer as the direct and/or indirect result of his treatment and conduct towards me.

"I have read the above and foregoing instrument and understand its contents and have had explained to me by an attorney of my own selection the effect of its execution, and I have been informed, before executing this release, by my attorney that this instrument is intended, and it shall operate, as a full and complete release of any claim, of whatever character, which I have or may be entitled to against said Walter B. Hudgins, his heirs and legal representatives, for damages growing out of any acts—either commission or omission—on his part towards me."

This agreement is not assailed and it compromised and settled all of the legal rights arising from the wrongs committed by Walter B. Hudgins against Mrs. Hunt. The record is without dispute that thereafter Mrs. Hunt's conduct toward Mr. and Mrs. Hudgins consisted of carefully designed wrongful acts, ruthlessly committed, for the purpose of harassing plaintiffs, with the express purpose of breaking up their home.

The jury found substantially (1) that defendant came to the home of the plaintiffs in November, 1940, and attempted to strike Walter B. Hudgins and told him that she was going to kill him before the month was out, and that she was also going to kill Mrs. Hudgins, and that on said occasion she applied to Walter B. Hudgins vile epithets, and that such acts on the part of the defendant were not provoked by plaintiffs; and (2) the jury convicted Mrs. Hunt of committing various other vexatious acts for the purpose of harassing and annoying plaintiffs and that such acts on the part of the defendant were not provoked by plaintiffs, and found that such conduct would likely continue in the future

unless the defendant was prevented by injunction. We think the evidence is ample to support such findings.

 It is clear to us that plaintiffs were entitled to the relief they sought, and that such relief required the restraint of the defendant. Plaintiffs, as citizens, had the right to the pursuit of happiness, freedom to go unmolested where they might choose and pursue their lawful occupations and activities, and freedom to reclaim the life of plaintiff Walter B. Hudgins from the breach of his marriage contract in order that they might preserve that institution which we call the home, the bulwark of our civilization. It is equally clear to us that a court of equity is without power to correct such moral wrongs as were committed by reason of the conduct and association of Mr. Hudgins and Mrs. Hunt, but we think the doors to courts of equity are open to those who seek to break away from such wrongful conduct, and that plaintiffs sought such relief after all other means available to them had failed. It would serve no useful purpose to dwell upon this most unfortunate situation and would add only to the heartaches that have heretofore been caused, but we think we should say that this record convicts Mrs. Hunt of the violation of her legal duty to herself and plaintiffs, after she executed the settlement agreement, and she should have sought to rectify her conduct and should not have thereafter imposed herself upon Mr. Hudgins and his wife, who was free from wrongdoing, for the purpose of harassing and molesting them.

Since the settlement agreement was not assailed and since the plaintiffs sought relief from the conduct of Mrs. Hunt subsequent to such settlement agreement, the details of the conduct and association of Walter B. Hudgins and Mrs. Hunt prior to the settlement agreement were wholly immaterial to the issues involved in this cause, and our view is that the trial court did not err in refusing to let defendant's counsel interrogate Walter B. Hudgins and Mrs. Hunt with reference to their conduct and association prior to the settlement agreement. This case comes within the rule of law announced in Hawks v. Yancey, Tex.Civ.App., 265 S.W. 233, and we refer to the opinion by Justice Looney for the principles of law so tersely stated and ably discussed, and for collation of authorities.

We overrule defendant's contention to the effect that the plaintiffs waived their right of recovery by not submitting to the jury the controlling issue of recovery. The findings of the jury answer this contention adversely to appellant. Our view of the record here made is that if the defendant did not share the view of the trial court as to the issues made by the evidence, she should have interposed her objections to the court's charge. We have examined the exceptions filed to the court's charge and they are without merit. Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

We have carefully examined each of the other points raised by defendant and find that they are without merit· and they are hereby overruled.

The judgment of the trial court is affirmed.