Janle PASSEL et al., Petitioners,

v.

**FORT WORTH INDEPENDENT SCHOOL DISTRICT et al., Respondents.**

No. B–1018.

Supreme Court of Texas.

April 16, 1969.

Rehearing Denied May 14, 1969.

Garrett, Garrett & Callaway, Rufus S. Garrett, Jr., Fort Worth, for petitioners.

Morgan, Gambill & Owen, Cecil A. Morgan, Fort Worth, for respondents.

WALKER, Justice.

This suit was brought by a number of high school students and their parents against the Fort Worth Independent School District and the members of its Board of Education. Plaintiffs seek a judgment declaring that Article 301d, Vernon's Ann.P.C., is unconstitutional and enjoining defendants from denying the minor plaintiffs admission to the schools because of membership in one of the so-called charity clubs. Defendants interposed pleas to the jurisdiction, asserting: (1) that plaintiffs had not exhausted their administrative remedies, and (2) that the action is an improper attempt to have a court of equity pass on the validity of a criminal statute without any showing of irreparable injury to vested property rights. After a hearing on the application for a temporary injunction, the trial court sustained the pleas to the jurisdiction and dismissed the cause. The Court of Civil Appeals affirmed. 429 S.W.2d 917. We reverse the judgments of the courts below and remand the cause to the district court.

By the provisions of Article 301d, public school fraternities, sororities and secret societies as there defined are declared to be inimical to the public good and are prohibited in all public schools of the state below college level. In so far as material here, the statute further provides:

"Sec. 2. A Public School Fraternity, Sorority, or Secret Society as used in this Act is hereby defined to be any organization composed wholly or in part of public school pupils of public schools below the rank of College or Junior College as herein provided, which seeks to perpetuate itself by taking in additional members from the pupils enrolled in such school on the basis of the decision of its membership rather than upon the free choice of any pupil in the school who is qualified by the rules of the school to fill the special aims of the organization.

\*   \*   \*   \*   \*   \*

"Sec. 4. It should be the duty of School Directors, Boards of Education, School Instructors and other corporate authority managing and controlling any of the Public Schools of this State within the provisions of this Act, to suspend or expel from the school under their control any pupil of such school who shall be or remain a member of, or who shall join or promise to join, or who shall become pledged to become a member of, or who shall solicit any other person to join, promise to join, or be pledged to become a member of any such Public School Fraternity, or Sorority, or Secret Society. Providing that the above restrictions shall not be construed to apply to agencies for Public Welfare, viz: Boy Scouts, Hi-Y, Girl Reserves, DeMolay, Rainbow Girls, Pan-American Clubs, and Scholarship Societies, and other kindred educational organizations sponsored by the State or National education authorities."

As originally enacted in 1937, the statute applied only in counties having a population of not less than 320,000 and not more than 350,000 inhabitants. It was amended in 1949 and made applicable in all counties of the state. On November 9, 1966, the Board of Education of the Fort Worth Independent School District adopted a supplementary enrollment application form and a rule effective September 1, 1967, requiring all pupils to submit the completed form as part of their application for enrollment. The form is as follows:

"As required by the Board of Education in compliance with Article 301d, of the Texas Penal Code, which reads as follows:

[Article 301d quoted in full]

"I hereby certify that my son/daughter ———— is not now a member or a 'pledge' of any club or organization as de-

fined above and that he/she will not join or participate in any way in the activities of such a club or organization.

"Witness my hand this —— day of ——, 19——.

_____

Signature of Parent or Guardian"

Each of the minor plaintiffs is, or was at the time suit was instituted, a member of one of the charity clubs. These clubs fall within the terms of the definition found in section 2 of Article 301d. They are perpetuated by taking in additional members from pupils enrolled in the schools on the basis of the decision of the membership. A student is not allowed to join by his own free choice even though he may be qualified by the rules of the school to fill the special aims of the organization. The clubs hold regular meetings, sponsor social functions, and make financial contributions to worthwhile charities. Their meetings and social functions are held off school premises and during hours when school is not in session. The extent to which the clubs and their activities may affect the operation of the schools is not fully disclosed by the present record. It appears that on at least one occasion part of the initiation procedure was conducted on school premises. The athletic programs have been so disrupted that the coaches at two high schools prohibited participation by any student who belonged to one of the clubs. There is no evidence tending to show that the clubs do not have an adverse effect on the schools except the proof concerning the places and hours of their meetings and social functions.

Plaintiffs contend that Article 301d does not apply to the charity clubs. They say that if it does, the statute is unconstitutional either on its face or in its application. They first filed suit in the United States District Court seeking substantially the same relief that is sought here. That proceeding was stayed by the court "until the courts of the State of Texas shall have been afforded the opportunity to determine the constitutional questions here presented, and until the administrative remedies available to the plaintiffs have been utilized." The present suit was then filed.

It has been said that the power and authority to interpret criminal statutes rests solely with the courts of this state exercising criminal jurisdiction. Crouch v. Craik, Tex.Sup., 369 S.W.2d 311. We have already confessed that this statement is much too broad. State v. Shoppers World, Inc., Tex.Sup., 380 S.W.2d 107. It is well settled that courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury to vested property rights. City of Fort Worth v. Craik, Tex.Sup., 411 S.W.2d 541. The underlying reason for this rule is that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction. When these questions can be resolved in any criminal proceeding that may be instituted and vested property rights are not in jeopardy, there is no occasion for the intervention of equity. A person may continue his activities until he is arrested and then procure his release by showing that the law is void. See City of Austin v. Austin City Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528.

It has also been said that courts of equity are concerned only with the protection of civil property rights. Ex parte Sterling, 122 Tex. 108, 53 S.W.2d 294. This is not the modern view, and it seems clear to us that the Texas statute is broad enough to authorize the granting of an injunction for the protection of personal rights. See Article 4642;[1] Ex parte Warfield, 40 Tex. Crim. 413, 50 S.W. 933; Hunt v. Hudgins, Tex.Civ.App., 168 S.W.2d 703 (no writ); Hawks v. Yancey, Tex.Civ.App., 265 S.W. 233 (no writ); Annotation, 175 A.L.R. 438;

_____

1. All statutes except Article 301d are cited by the article number under which they appear in Vernon's Ann.Tex.Civ.Stat.

Pound, Equitable Relief Against Defamation and Injuries to Personality, 29 Harv. L.Rev. 640; Long, Equitable Jurisdiction to Protect Personal Rights, 33 Yale L.J. 115.

Plaintiffs are not attempting to enjoin prosecutions under Article 301d. Apparently no prosecution is threatened or even contemplated. Injunctive relief is sought to prevent administrative enforcement of an administrative regulation adopted for the purpose of implementing the statute. The rule of the Board of Education requires a student to furnish, as part of his application for admission, a statement that he is not and will not become a member of one of the organizations prohibited by Article 301d. Although defendants argue that no one has been denied the right to attend school, there is nothing in the present record to warrant the belief that a pupil who refused to furnish the statement would be permitted to enroll.

■ Plaintiffs contend that the statute and rule, if applicable to the charity clubs, constitute an unwarranted interference with the constitutionally protected right of free and private association. If this contention is sound, enforcement of the rule adopted by the Board will mean that a student cannot enjoy the benefits to which he is entitled under the provisions of Article 2902[2] unless he is willing to be circumscribed in the exercise of one of his constitutional rights. The criminal courts cannot determine the meaning and validity of the statute unless a prosecution is instituted, and plaintiffs have no way to attack the rule except by an administrative appeal or a civil action. The civil courts are not powerless to grant relief under these circumstances, and we hold that the trial court erred in dismissing the cause on the ground that it had no jurisdiction to construe and determine the constitutionality of the criminal statute in this proceeding.

■ The case was also dismissed because plaintiffs had not exhausted their administrative remedies. According to a letter opinion which appears in the transcript, the trial court concluded that there should be an administrative determination, by the State Commissioner of Education or the State Board of Education on appeal from the action of the local Board, as to: (1) whether Article 301d should be enforced, and (2) whether the charity clubs adversely affect the operations of the Fort Worth Independent School District. Plaintiffs do not contend that the rule is unwise or unsound as a matter of policy in the administration of the school laws. They do not say that the rule constitutes an abuse of the discretion vested in the Board of Education by law. Their attack is based entirely on the construction and constitutionality of the statute and rule.

Defendants argue that wholly apart from Article 301d, the rule is a valid exercise of the general power of management and control vested in the trustees by law. It seems clear to us, however, that the rule was adopted for the purpose of insuring compliance with the statute. If it is finally determined that the charity clubs are not covered thereby or that the statute is unconstitutional, it is our opinion that enforcement of the rule should be restricted accordingly. In other words the rule, which is based upon the statute, should stand or fall with the statute. The Board will then be free, as always, to adopt any legal rules it may consider appropriate in the exercise of the general powers conferred upon it by law. We agree with the Court of Civil Appeals that the case turns upon questions of law that can be determined by the court after the facts concerning the effect of the clubs upon the operation of the

---

**2.** Art. 2902.

   * * * The board of school trustees of any city or town or independent or common school district shall admit to the benefits of the public schools any person over six and not over twenty-one years old at the beginning of the scholastic year, if such person or his parents or legal guardian reside within said city, town or district.

schools have been fully developed. It was not necessary, therefore, for plaintiffs to prosecute an administrative appeal before instituting the present action.

The parties have briefed and argued the merits of the case at length, but we do not attempt to decide these questions here. As previously indicated, this is an appeal from a dismissal of the cause at the conclusion of the hearing on the application for a temporary injunction. According to one of the briefs filed by defendants, all of the minor plaintiffs are either attending school or have graduated. The case has not been tried on its merits, and is not ripe for the rendition of a final judgment. A temporary injunction is not warranted by the evidence in this record. No attempt was made to prove the aims and activities of the organizations excepted in Section 4 of Article 301d, and our judicial knowledge about some of them is rather limited. It cannot be said on the present record that there is no reasonable basis for the classification established by the Legislature or that the statute is unconstitutional as applied to plaintiffs. Wholly apart from any question as to the meaning and constitutionality of Article 301d, moreover, the trial court would, in the exercise of a sound discretion, be justified in denying a temporary injunction unless it appears that the rule as adopted and enforced by the Board constitutes an unwarranted interference with the exercise by plaintiffs of a constitutionally protected right.

The judgments of the courts below are reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

SMITH, J., dissenting.

McGEE, J., not sitting.

SMITH, Justice (dissenting).

I respectfully dissent. In order to decide the issue in this case, it is entirely unnec-essary to place further limitations upon the holding in Crouch v. Craik, 369 S.W.2d 311 (Tex.Sup.1963) and Ex Parte Sterling, 122 Tex. 108, 53 S.W.2d 294 (1963). I agree that, this being a declaratory judgment suit, courts of equity have jurisdiction to pass upon the validity of the statute involved. This is not a case where prosecutions under the provisions of Article 301d, a criminal statute, are involved. It is a case, however, wherein this Court should promptly determine whether or not the application of the statute and rule adopted by the school board constitutes an unwarranted interference with the constitutionally protected right of free and private association by the members of the clubs in accordance with the constitution and by-laws governing such clubs. The paramount question involved can be finally determined by this Court on the basis of the facts introduced at the hearing held in the District Court of Tarrant County, Texas, on June 22, 1967. The school district admitted that the evidence it offered was all of the evidence it could produce, except that which would be "merely cumulative of this same subject * * *, so we offer this only to show it does affect the school program, so we rest."

The facts are these. It was stipulated that all clubs involved were of the same general nature, charity clubs. The constitution of each club was introduced in evidence. The Inter-Club Council, which governs all clubs involved, as each club is a member, states in its constitution its purpose to be: "The purpose of this Council shall be to promote friendship among the Charity Clubs of boys and girls of high school age."

The constitution further provides in section 1 that "the membership of this Council shall be well-established charity clubs of boys and girls of high school age." It is provided in section 2 that "clubs wishing admittance shall submit a written petition to the membership committee and shall fulfill certain other requirements."

In regard to meeting places, the constitution provides, as follows:

"ARTICLE VIII—SPECIAL RESTRICTIONS

*Section 1.* No meetings or functions of either the Inter-Club Council or any member club shall be conducted during public school hours or on public school property or premises.

*Section 2.* No member or provisional member of any member club shall be required or permitted to engage in any club activities during public school hours or on public school premises.

*Section 3.* No member or provisional member of any member club shall be subjected to any requirements which would necessitate neglect of school duties.

*Section 4.* Partiality to individual clubs shall not enter into school politics.

*Section 5.* No club in I.C.C. shall have pledge activities on any public school grounds or at any public school sponsored activities. A fine of $100.00 may be charged to any club violating this rule."

The constitutions of the member clubs are also in evidence. Generally, the object of the clubs is stated to be to contribute to local charitable institutions through proceeds from various non-professional entertainments and to promote loyalty, congeniality, lofty ideals and character among high school students, girls and boys. One of the clubs has for its purpose "to promote brotherhood, social activities and charity." These member clubs' constitution provided for regular meetings and special meetings, but nothing is contained in any of the constitutions which even indicates that the meetings were to be held at any place on the school campuses. In fact, the testimony shows that all meetings were held at places not under the control of the school district and at times not in conflict with school hours. The evidence shows that the parents of the minors involved were required to execute a Supplemental Enrollment Form certifying that their children, otherwise eligible to reenter the public schools in the fall of 1967, were not members of clubs falling within the definition of Article 301d, Texas Penal Code, and that the children would not in the future participate in the activities of such clubs. The refusal of the parents to comply precipitated this declaratory judgment suit. There is no hint in the evidence that the "Charity Clubs" in question are charged with subversive or any other improper activity, except the selection of members contrary to rules promulgated by the school districts based upon Article 301d of the Penal Code. On the other hand, the evidence shows that certain clubs have raised as much as $2,500.00, $3,000.00, $3,-800.00, for such organizations as the Mental Health Association, the Child Study Center and the Fort Worth Childrens' Hospital.

The school district, through their counsel, stated in open court that "I don't think there is any argument that the School Board proposes to enforce its' rule and proposes to keep parties who are members of the type of organizations to which the plaintiffs join from entering school in 1967."

The school district introduced the testimony of two football coaches, who testified in regard to the activities of the clubs in relation to athletic activities. Coach Ludiker testified that about five or six years before June 22, 1967, the athletic department adopted a rule prohibiting members of these clubs from participating in athletics. His reasons for adopting the rule were that he observed some of them "doing ring around the rosy and taking ROTC hats of those who pledge and carrying lunch trays and all of this business, and to me that is not the making of good athletes, and the reports come in of some of our boys attending some of these parties that were drinking."

Ludiker also testified that besides doing ring around the rosy, carrying lunch trays and taking ROTC hats, names of the clubs were plastered on furniture in the school.

He said that the school had not promulgated a rule to stop playing "ring around the rosy" on the campus; they are not supposed to pledge in the lunch rooms and that the rule against pledging in the lunch rooms was being followed by the members of the clubs. Then he was asked: what about the problem with ROTC caps? Has that been remedied? He answered: "That has been solved as far as I know." He further testified that unity had prevailed since the rule separating the clubs from athletics, even though the clubs were still in existence.

Ludiker further testified: "Athletics is open to any one that wants to participate, but we felt like if they carried on with some of the activities that they carried on with we would not have the unity of being a good athletic team for Arlington Heights." Ludiker testified that the entire athletic program at Arlington Heights was conducted under the rule that all boys belonging to these Intercouncil Clubs were barred from playing on the athletic teams. He testified on cross-examination that he had had no problems with the clubs since the adoption of the rule.

Mr. James Cox, a coach with the Fort Worth public school system, the respondent here, testified that he was a biology and physical education teacher in the Paschal High School; he had been an assistant coach since 1960 and the head track coach since 1961; he had been recently elevated to head coach and athletic director of the new Southwest High School. He testified that the clubs, to his knowledge, did not exist, so far as Paschal was concerned, "until about three years ago." Cox was of the opinion that "football probably carries the High Schools, and this is what I am more or less interested in, but our athletic program in the past two years has not been as good as it had been prior to that. Now I feel this because since this time, in the three years, since these clubs have really gotten organized and have been established at the school that they have destroyed what we had at Paschal for the first five years I was there team unity." Cox testified that he had seen students, members of the clubs and athletes, carrying petitions (no actual knowledge of contents) and on one occasion he saw some "paddles" used by boys initiating club members, but that this incident occurred after school "right down at the end of the parking lot on the school premises." The witness declined to give the names of the boys involved, but stated that they were athletes as well as members of the clubs. All of these incidents brought about the adoption of a rule prohibiting members of the secret clubs from participating in any form of athletics at Paschal High School. "We, just this past spring, the past school semester, the coaches got together and we decided that anybody who was a member of one of the clubs would not participate in athletic programs at Paschal High School." He testified further that the rule would be enforced at the new school at Southwest. Although Cox says that these clubs "have been established at the school", there is not one scintilla of evidence that these clubs are "at the school" in the sense that they are "in" the schools and conduct their meetings and other activities in the schools or on the campuses of the schools.

The Legislature, in adopting Article 301d, intended to regulate only organizations which are "in" the public school system by reason of sponsorship or support. See Gibson v. Florida Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). I cannot agree with the school district's contention that the statute is to be interpreted as prohibiting membership in any organization within the definition of Section 2 of the statute regardless of the fact that these clubs meet entirely off school premises and during hours when school is not in session. The charity clubs here involved are not in the public schools, and if the statute should be intended to apply to these clubs which are outside of the schools, then it is unconstitutional. There is nothing in this record to authorize the school board to suspend the members of

**68**

these clubs and deprive them of the protection in their right of freedom of association, their vested property rights and the right to an education, afforded them by Article VII of the Texas Constitution and Article 2902, Vernon's Annotated Civil Statutes. Furthermore, Article 301d, if interpreted as the school district desires, is invalid as an unreasonable restriction of the club members' right to freedom of association guaranteed by the First and Fourteenth Amendments to the United States Constitution. In my opinion, the statute is unconstitutional not only because of deprivation of freedom of association, but also because of discrimination in favor of those clubs or organizations specifically exempted, such as De Molay, Rainbow Girls, Boy Scouts, Hi-Y, Girl Reserves, and other like educational organizations.

As was said by the Court in Buchanan v. Warley, 245 U.S. 60, 74, 38 S.Ct. 16, 18, 62 L.Ed. 149, 160, " * * * the police power, broad as it is, cannot justify the passage of a law or ordinance which runs counter to the limitations of the federal Constitution", and I will add the Texas Constitution. Granted that the few acts attributed to the minor petitioners in this case may be the subject of distraction and subject to regulation, I cannot conceive of any justification for a requirement that these clubs be disbanded or that the children be suspended from the school of their choice. See Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). There can be no question but that under a proper state of facts, the school board has the power and authority to suspend students for "incorrigible conduct" under Article 2904 or to expel them for violation of Article 301d, *supra*, but there can be no authority for the arbitrary refusal of admission to students whose parents will not sign the certificate quoted in the Court's opinion. See Gilmore v. James, 274 F.Supp. 75 (D.C.Tex.) aff'd 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783, reh. den. 390 U.S. 975, 88 S.Ct. 1027, 19 L.Ed.2d 1195 (1968).

Since the record has been fully developed, this Court should reverse the judgments of the lower courts and render judgment declaring unconstitutional Article 301d. If the Court adheres to its present views, then the District Court should be instructed to grant a temporary injunction to preserve the status quo. The status quo is the right of the minor students involved and those of the same class to continue their education pending final disposition of this case. I think the failure of the trial court to grant a temporary injunction would constitute an abuse of discretion.