Robert C. RYAN, Jeffrey L. Dorrell, Steven Howell, JoAnn McCracken, Lonnie Buckner, Barbara Coffman Buck, Shannon Burns, Dan Hall, and Pat Riddle Womack, Appellants,

v.

Charles A. ROSENTHAL, in his Capacity as District Attorney of Harris County, Texas, Appellee.

No. 14–08–00382–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 20, 2010.

Jeffrey L. Dorrell, David J. Farris, Houston, for appellants.

Scott A. Durfee, Houston, for appellee.

Panel consists of Justices BROWN and BOYCE, and Senior Justice MIRABAL.*

## OPINION

WILLIAM J. BOYCE, Justice.

Appellants Robert C. Ryan, Jeffrey L. Dorrell, Steven Howell, JoAnn McCrack-

en, Lonnie Buckner, Barbara Coffman Buck, Shannon Burns, Dan Hall, and Pat Riddle Womack appeal from the 190th District Court's order granting appellee Charles A. Rosenthal's motion to dismiss their declaratory judgment action for lack of subject matter jurisdiction. We affirm.

### Background[1]

The issue before us focuses on the circumstances under which a district court can exercise its civil jurisdiction by issuing a declaratory judgment addressing the enforceability of a criminal statute.

■ This appeal arises from proceedings in the 263rd District Court and the 190th District Court in Harris County. By local rule and statutory preference, the 263rd District Court hears only criminal cases. The 190th District Court hears only civil cases.[2]

Appellants served as members of the 263rd District Court's grand jury from August 6, 2007 to November 2, 2007 and are referred to collectively as the "Grand Jurors." During that term, the Grand Jurors considered whether indictments

---

* Senior Justice Margaret Garner Mirabal sitting by assignment.

1. The factual recitations in this opinion are based primarily upon the allegations in the Grand Jurors' third amended petition, which was the live pleading on file when the 190th District Court signed its order dismissing the case for lack of subject matter jurisdiction. *See Tex. Natural Res. & Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001).

2. Appellate opinions sometimes refer in shorthand fashion to the ability of "civil courts" to address enforceability of criminal statutes. The Texas Constitution provides that district courts have jurisdiction over both civil and criminal cases. Tex. Const. art. V, § 8; *State v. Landry,* 793 S.W.2d 281, 284 (Tex.App.-Houston [14th Dist.] 1990, orig. proceeding) (citing *Lord v. Clayton,* 163 Tex. 62, 352

S.W.2d 718, 721–22 (1961), and *Reasonover v. Reasonover,* 122 Tex. 512, 58 S.W.2d 817 (1933)). It follows that the 190th District Court is not a "civil court" in a constitutional sense; the 190th District Court hears only civil cases, but that occurs pursuant to local rule rather than by constitutional or statutory decree. HARRIS COUNTY DIST. JUDGES ADMIN. R. 9.1.3 (assigning the 190th District Court to the "civil division" and the 263rd District Court to the "criminal division"); *see also* Tex. Gov't Code § 24.440(b) (Vernon 2004) (providing that "[t]he 263rd District Court shall give preference to criminal cases."). Therefore, it is more precise to frame the issue in terms of a district court's ability to address the enforceability of a criminal statute through the exercise of its civil jurisdiction.

should be presented against any individual in connection with a June 28, 2007 fire that destroyed a house at 3507 High Falls Drive in unincorporated Harris County, Texas. The house was owned by David M. Medina and his wife Francisca Medina.

On November 2, 2007, the 263rd District Court signed an order extending the grand jury's term to expire on February 1, 2008.

On January 17, 2008, the Grand Jurors presented indictments against David and Francisca Medina. The indictment presented against Francisca Medina stated that she unlawfully "start[ed] a fire by igniting a combustible fluid with the intent to destroy and damage a habitation located at 3507 High Falls Drive" on June 28, 2007 and "knew that the habitation was subject to a mortgage and security interest." The indictment presented against David Medina stated that he presented "a letter concerning an arson fire occurring at 3507 [High] Falls Drive ... with knowledge of its falsity and with intent to affect the course and outcome of the investigation" of the June 28, 2007 fire. The indictments were dismissed on January 18, 2008 upon the State's motion on grounds of insufficient evidence.[3]

The presentment and dismissal of indictments against David Medina, a sitting justice on the Supreme Court of Texas, and his wife received widespread media coverage. Media reports on January 17, 2008 discussed the indictments; reported that Harris County District Attorney Charles A. Rosenthal intended to seek dismissal of the indictments; and reported that grand jurors Ryan and Dorrell had criticized Rosenthal for his handling of the indictments.

David Medina's attorney held a televised press conference on January 18, 2008 after the indictments were dismissed, during which he criticized the Grand Jurors for presenting the indictments. David Medina's attorney also filed a petition for a show cause hearing in the 263rd District Court to determine whether grand jurors Ryan and Dorrell should be held in contempt for violating the statutory requirement of grand jury secrecy based upon their statements to the media in connection with the Medina indictments. *See* Tex.Code Crim. Proc. art. 20.02(a) (Vernon 2005) ("The proceedings of the grand jury shall be secret."); *id.* art. 20.02(b) ("A grand juror ... who discloses anything transpiring before the grand jury ... in the course of the official duties of the grand jury ... shall be liable to a fine as for contempt of the court, not exceeding five hundred dollars, imprisonment not exceeding thirty days, or both such fine and imprisonment."). The criticism by David Medina's attorney directed at the Grand Jurors and the filing of the petition for a show cause hearing were reported in the media on January 19, 2008.

On January 22, 2008, the 263rd District Court held that the November 2, 2007 order extending the grand jury's term contained a defect and was invalid. That same day, eight grand jurors held a televised press conference at which they addressed criticism that had been directed at them regarding the Medina indictments. The Grand Jurors allege that information required to be kept secret under article 22.02(a) was not disclosed in the course of this press conference.

On February 15, 2008, the Grand Jurors filed their original petition for a declaratory judgment against Rosenthal and the

---

3. We take judicial notice that another grand jury presented an indictment against Francisca Medina on April 30, 2008 in connection with the June 28, 2007 fire, and that the second indictment was dismissed on August 27, 2009. *See* Tex.R. Evid. 201(b); *Langdale v. Villamil,* 813 S.W.2d 187, 189–90 (Tex. App.-Houston [14th Dist.] 1991, no writ).

State of Texas in the 190th District Court. They subsequently filed amended petitions culminating in Plaintiffs' Third Amended Original Petition for Declaratory Judgment, in which they contended that they "have both the right and the privilege to disclose evidence showing that they were not a 'runaway grand jury' when they indicted Texas Supreme Court Justice David M. Medina for evidence tampering." The Grand Jurors also asserted that they "should be free, if they wish, to defend themselves without fear of incarceration or other sanction for doing so." They requested the following specific declarations.

■ The Grand Jurors "have the right and privilege to publicly disclose evidence and testimony considered by the Grand Jury before voting the indictments of David M. Medina in response to David M. Medina's public attacks on [the Grand Jurors'] ... character...." As support for this declaration the Grand Jurors rely upon *Houston Press Co. v. Smith*, 3 S.W.2d 900, 907 (Tex.Civ.App.-Galveston 1928, writ dism'd w.o.j), a libel case brought by a former district attorney against a newspaper arising in part from reports concerning disputes between the former district attorney and grand jurors.[4]

■ The Grand Jurors "are not subject to the penalties of TEX.CODE CRIM. PROC. art. 20.02 for disclosing anything transpiring before the unlawfully constituted Grand Jury after **November 2, 2007** ...." (original emphasis).

■ The Grand jurors "are not subject to the penalties of TEX.CODE CRIM. PROC. art. 20.02 for disclosing evidence and testimony considered by the Grand Jury supporting the indictments of David and Francisca Medina *before or after* **November 2, 2007,** to another lawfully constituted Harris County grand jury meeting in secret and whose members are bound by the oath of secrecy ...." (original emphasis).

The Grand Jurors do not seek to invalidate article 20.02 on constitutional grounds or to enjoin enforcement of the statute; they concede article 20.02 is constitutional and valid. The Grand Jurors do not contend that a statutory exception to grand jury secrecy applies in this case. *See* Tex.Code Crim. Proc. art. 20.02(c), (d), (e) (Vernon 2005).

Rosenthal filed a motion to dismiss the Grand Jurors' declaratory judgment action for lack of subject matter jurisdiction, contending that the 190th District Court lacks civil jurisdiction to construe a criminal statute and determine whether disclosure of evidence and testimony presented before the 263rd District Court's grand jury violates article 20.02's criminal contempt provisions.

The 190th District Court signed an order on April 30, 2008 granting Rosenthal's motion to dismiss, and the Grand Jurors timely appealed.[5]

## Analysis

The Grand Jurors raise five issues on appeal challenging the 190th District Court's April 30, 2008 order.

---

4. We express no opinion about whether *Houston Press Company*, which addressed a privilege to make statements as a defense to liability for monetary damages in a libel suit, is germane to determining whether secret grand jury proceedings can be disclosed without suffering criminal penalties under article 20.02. *See Houston Press Co.*, 3 S.W.2d at 907–08.

5. The Grand Jurors filed a notice of nonsuit of their claims against the State of Texas on March 10, 2008. The trial court signed an order granting the nonsuit on March 18, 2008.

■ In their first three issues, the Grand Jurors assail the 190th District Court's determination that it lacked subject matter jurisdiction to consider their declaratory judgment action. "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo.*'" *Id.* "Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id.*

We begin by reviewing the settled law establishing that civil jurisdiction to address criminal statutes is narrowly circumscribed.

## I. Civil Jurisdiction to Address Criminal Statutes is Limited

### A. Civil Jurisdiction to Enjoin Enforcement is Narrow

■ "[A]s a rule, a party cannot seek to construe or enjoin enforcement of a criminal statute in a civil proceeding without a showing of irreparable injury to the party's vested property rights." *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 441 (Tex.1994) (citing *State v. Morales,* 869 S.W.2d 941 (Tex.1994)); *see also Tex. Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 894 (Tex.1970) ("The civil courts are not powerless to interpret [a criminal statute], but its meaning and validity should ordinarily be determined by courts exercising criminal jurisdiction."); *Passel v. Fort Worth Indep. Sch. Dist.,* 440 S.W.2d 61, 63 (Tex.1969) ("It is well settled that courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury to vested property rights."); *State v. Shoppers World, Inc.,* 380 S.W.2d 107, 110 (Tex. 1964) ("[C]ourts of equity will take jurisdiction to enjoin enforcement of penal laws only in exceptional situations, thus leaving those laws to be interpreted through the criminal trial process whenever possible.").

■ These limits mean that a district court has civil jurisdiction to declare a criminal statute constitutionally invalid and to enjoin its enforcement only when (1) "there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened," or (2) "the enforcement of an unconstitutional statute threatens irreparable injury to property rights." *Morales,* 869 S.W.2d at 942. "A naked declaration as to the constitutionality of a criminal statute alone, without a valid request for injunctive relief, is clearly not within the jurisdiction of a Texas court sitting in equity." *Id.; Warren v. Aldridge,* 992 S.W.2d 689, 691 (Tex.App.-Houston [14th Dist.] 1999, no pet.) ("[B]efore a civil court may construe a penal statute and enjoin its enforcement, the complainant must both attack the constitutionality of the provision and aver that its enforcement would irreparably injure vested property rights."); *see also City of Houston v. Guthrie,* —— S.W.3d ——, —— (Tex.App.-Houston [1st Dist.] 2009, no pet. h.) (citing *City of La Marque v. Braskey,* 216 S.W.3d 861, 863 (Tex.App.-Houston [1st Dist.] 2007, pet. denied)); *Morrow v. Truckload Fireworks, Inc.,* 230 S.W.3d 232, 236–41 (Tex.App.-Eastland 2007, pet. dism'd as moot); *Sterling v. San Antonio Police Dept.,* 94 S.W.3d 790, 794 (Tex.App.-San Antonio 2002, no pet.); *Cornyn v. Akin,* 50 S.W.3d 735, 737–38 (Tex.App.-El Paso 2001, no pet.); *Letson v. Barnes,* 979

S.W.2d 414, 418 (Tex.App.-Amarillo 1998, pet. denied).[6]

The limits on civil jurisdiction to address criminal statutes are grounded on important public policy considerations.

■■■ "The underlying reason for this rule is that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction." *Passel,* 440 S.W.2d at 63. "When these questions can be resolved in any criminal proceeding that may be instituted and vested property rights are not in jeopardy, there is no occasion for the intervention of equity." *Id.* "A person may continue his activities until he is arrested and then procure his release by showing that the law is void." *Id.; see also Morales,* 869 S.W.2d at 945.

■■■ This longstanding policy favoring construction of criminal statutes in criminal proceedings rests in part on "a pragmatic justification" arising from the fact that Texas has two courts of last resort: The Supreme Court of Texas, which has final appellate jurisdiction in civil cases, and the Texas Court of Criminal Appeals, which has final appellate jurisdiction in criminal cases. *Morales,* 869 S.W.2d at 947; *see also* Tex. Const. art. V, § 3(a), 5(a).

Having competing trial courts construe criminal statutes in parallel civil and criminal proceedings would " 'create confusion

... and might result finally in precise contradiction of opinions between the [civil courts] and the Court of Criminal Appeals to which the Constitution has [e]ntrusted supreme and exclusive jurisdiction in criminal matters.' " *Morales,* 869 S.W.2d at 947–48 (quoting *Roberts v. Gossett,* 88 S.W.2d 507, 509 (Tex.Civ.App.-Amarillo 1935, no writ)). "[I]f civil courts were to accept jurisdiction, a potential for conflicting decisions ... between our civil and criminal courts of last resort on the validity of such statutes [would be] ... a very real danger." *Morales,* 869 S.W.2d at 948 (citing *Dearing v. Wright,* 653 S.W.2d 288, 290 (Tex.1983)). "[I]t is the *prospect* that civil courts will get into the business of construing criminal statutes which represents the real danger." *Morales,* 869 S.W.2d at 948 n. 16 (original emphasis).

■■■ But pragmatism is not the only consideration, or the most important one. These limits protect "[t]he very balance of state governmental power imposed by the framers of the Texas Constitution ..." *Id.* at 949. This balance "depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds." *Id.* "The checks and balances inherent in our form of government depend upon the judiciary's equanimity and particularly upon our self-restraint." *Id.* "When a court lacks jurisdiction, its only legitimate choice is to dismiss." *Id.*

---

**6.** The Grand Jurors cite *City of San Antonio v. Rankin,* 905 S.W.2d 427, 429, 431 (Tex.App.-San Antonio 1995, no writ), in which a district court permissibly exercised civil jurisdiction to enjoin enforcement of a penal ordinance despite the asserted absence of a vested property right. The penal ordinance required fire department supervisors to file annual financial disclosure statements. *Id. Rankin* is distinguishable because the injunction at issue also prohibited the city from taking internal disciplinary action against the supervisors for failing to file disclosure statements in response to the fire chief's directive to do so. Therefore, "the trial court had jurisdiction in this instance because the fire chief's memo was considered a direct order and thus subjected the supervisors to employment-related disciplinary action in addition to criminal prosecution." *Morrow,* 230 S.W.3d at 237 (citing *Rankin,* 905 S.W.2d at 429–30). The Grand Jurors' claims do not involve a dual criminal and employment-related disciplinary process. *See id.*

## B. Civil Jurisdiction to Issue Declaratory Relief Also is Narrow

The limits on civil jurisdiction to address criminal statutes do not apply only in suits seeking injunctive relief.

 "The considerations that lead courts of equity to deny injunctive relief against enforcement of the criminal laws apply with equal force to an action for a declaratory judgment construing a penal statute." *Tex. Liquor Control Bd.*, 456 S.W.2d at 896. "[T]he procedures prescribed by the Legislature should not be circumvented or delayed by the prosecution of a declaratory judgment action to obtain a construction of the penal statute by the civil courts." *Id.*

 This further limitation dovetails with the precept that the statutory authorization for declaratory judgments does not by itself confer jurisdiction. *See generally* Tex. Civ. Prac. & Rem.Code Ann. § 37.001 *et seq.* (Vernon 2008). "Just as an injunction is a remedial writ that depends in the first instance on the existence of the issuing court's equity jurisdiction, we have held that the Uniform Declaratory Judgments Act … is merely a procedural device for deciding cases already within a court's jurisdiction." *Morales*, 869 S.W.2d at 947 (citations omitted). "A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit." *Id.*

 "For the same reasons that equity courts are precluded from enjoining the enforcement of penal statutes, neither this court, nor the courts below, have jurisdiction to render a declaratory judgment regarding the constitutionality of [a criminal statute]." *Id.* "A civil court simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.' " *Id.* (quoting *Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex.Civ.App.-Galveston 1955, writ ref'd n.r.e.)); *see also Guthrie*, —— S.W.3d at —— (citing *City of La Marque*, 216 S.W.3d at 863); *Trantham v. Isaacks*, 218 S.W.3d 750, 753–54 (Tex.App.-Fort Worth 2007, pet. denied) (citing *Briar Voluntary Fire Dept. v. Anderson*, No. 02–04–258–CV, 2005 WL 1475409, at *2 (Tex. App.-Fort Worth June 23, 2005, no pet.) (mem. op.)).

We now measure the Grand Jurors' requested declaratory relief against these longstanding limits on civil jurisdiction and the undisputed jurisdictional facts.

## II. The Grand Jurors' Requested Relief Exceeds the Limits of a District Court's Civil Jurisdiction

 In its findings of fact and conclusions of law, the 190th District Court made the following determinations (among others).

- █ The Grand Jurors were members of the 263rd District Court's grand jury.
- █ The Grand Jurors took an oath to "keep secret" those matters occurring in the grand jury room unless they were "required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room, in a criminal case, shall be under investigation." *See* Tex.Code Crim. Proc. art. 19.34 (Vernon 2005).
- █ Article 20.02(a) provides that "[t]he proceedings of the grand jury shall be secret." *See* Tex.Code Crim. Proc. art. 20.02(a).
- █ Article 20.02's constitutionality is not challenged. The parties agree that this provision is constitutional.
- █ The Grand Jurors did not allege that immediate irreparable harm to per-

sons or vested property rights is likely to occur absent issuance of a declaratory judgment recognizing an exception to or exemption from the effects of the criminal statute governing the secrecy of grand jury proceedings.

Appellants do not challenge the determinations listed above. In light of these unchallenged determinations, the Grand Jurors' claims do not fall within the 190th District Court's limited civil jurisdiction to address a criminal statute. *See Morales,* 869 S.W.2d at 942; *Warren,* 992 S.W.2d at 691; *see also Guthrie,* —— S.W.3d at —— (citing *City of La Marque,* 216 S.W.3d at 863); *Morrow,* 230 S.W.3d at 236–41; *Sterling,* 94 S.W.3d at 794; *Cornyn,* 50 S.W.3d at 737–38; *Letson,* 979 S.W.2d at 418. The Grand Jurors make three arguments in an effort to circumvent the applicable jurisdictional limits.

First, the Grand Jurors argue that subject matter jurisdiction exists because they requested only declaratory relief; they neither invoked the 190th District Court's equity power nor sought to enjoin article 20.02's enforcement.

█ The Grand Jurors' first argument fails because the limits on a district court's civil jurisdiction to address a criminal statute apply regardless of whether the requested relief is framed as an injunction or a declaratory judgment. *Morales,* 869 S.W.2d at 947 ("A civil court simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.'") (quoting *Malone,* 278 S.W.2d at 206); *Tex. Liquor Control Bd.,* 456 S.W.2d at 896 ("The considerations that lead courts of equity to deny injunctive relief against enforcement of the criminal laws apply with equal force to an action for a declaratory judgment construing a penal statute."); *Warren,* 992 S.W.2d at 691 ("[O]ne of the two *Morales* elements has not been satisfied, and ... the trial court had no jurisdiction to render a declaratory judgment or to enjoin the enforcement of the penal statute."); *see also Guthrie,* —— S.W.3d at ——; *Trantham,* 218 S.W.3d at 753–54; *City of La Marque,* 216 S.W.3d at 863; *Briar Voluntary Fire Dept.,* 2005 WL 1475409, at *2.[7]

Second, the Grand Jurors argue that subject matter jurisdiction exists because they refrained from challenging article 20.02's constitutionality.

The second argument cuts against the Grand Jurors because the absence of a constitutional challenge to the targeted penal statute forecloses civil jurisdiction. *See Morales,* 869 S.W.2d at 942; *Warren,* 992 S.W.2d at 691. Moreover, the absence

---

7. We are not persuaded by the Grand Jurors' invocation of *Euresti v. Valdez,* 769 S.W.2d 575, 582 (Tex.App.-Corpus Christi 1989, orig. proceeding), or *Marks v. Feldman,* 910 S.W.2d 73, 77–78 (Tex.App.-Dallas 1995), *rev'd on other grounds sub nom. United States v. Marks,* 949 S.W.2d 320 (Tex.1997). *Euresti* denied a petition for writ of mandamus seeking to vacate an order requiring disclosure of grand jury testimony and exhibits in connection with discovery in a malicious prosecution case. *See Euresti,* 769 S.W.2d at 576. *Marks* addressed the propriety of sealing an *in camera* hearing concerning matters being investigated by a federal grand jury in light of federal standards governing grand jury secrecy. *Marks,* 910 S.W.2d at 77–78. Neither case involved a request for a declaratory judgment delineating a litigant's criminal liability or lack thereof under a Texas penal statute. Therefore, neither case confronts the core issue presented herein regarding a Texas district court's civil jurisdiction to address a request for such declaratory relief absent a constitutional challenge to the penal statute at issue and allegations of irreparable harm. Similarly, the Grand Jurors' citation of numerous *criminal* cases discussing grand jury secrecy sheds no light on a district court's ability to exercise *civil* jurisdiction to entertain a request for declaratory relief concerning the scope of statutory grand jury secrecy.

of civil jurisdiction "to render naked declarations of 'rights, status, or other legal relationships arising under a penal statute'" encompasses both "naked declarations" focused on constitutionality as well as "naked declarations" focused on determining whether particular conduct violates a particular penal statute or ordinance. *See Morales,* 869 S.W.2d at 947; *Tex. Liquor Control Bd.,* 456 S.W.2d at 896.[8]

The Grand Jurors seek to bolster their second argument by pointing to *City of Argyle v. Pierce,* 258 S.W.3d 674, 681 (Tex. App.-Fort Worth 2008, pet. dism'd), which relies on the absence of a constitutional challenge in discussing whether a district court had subject matter jurisdiction to address a penal ordinance regulating billboard placement. The court of appeals affirmed in part the district court's order denying the city's plea to the jurisdiction insofar as that order addressed a request for a declaratory judgment construing the penal ordinance. *Id.* at 686. In so doing, the court of appeals stressed that the property owner and the billboard company who sought the declaratory judgment were not challenging the penal ordinance's constitutionality or enforceability; "rather, their lawsuit seeks a declaration that their conduct *did not constitute a violation of that* [o]rdinance." *Id.* at 681 (original emphasis). "Accordingly, we hold that *State*

*v. Morales* does not affect the trial court's jurisdiction in this case...." *Id.* The Grand Jurors ask us to apply similar reasoning here.

We decline the Grand Jurors' invitation to follow *City of Argyle.* As a threshold matter, we look to this court's own precedent for guidance on this issue; that precedent confirms the propriety of dismissing the Grand Jurors' suit for lack of subject matter jurisdiction. *See Warren,* 992 S.W.2d at 691 (District court lacked civil jurisdiction to render declaratory judgment that "use of 'eight liner' machines does not constitute criminal activity"; absent challenge to constitutionality of penal statute prohibiting possession of gambling devices, "one of the two *Morales* elements has not been satisfied, and we must hold the trial court had no jurisdiction to render a declaratory judgment or to enjoin the enforcement of the penal statute.").

More fundamentally, *City of Argyle* is incompatible with *Morales* and its progeny. Contrary to *City of Argyle*'s reasoning, the absence of a constitutional challenge contracts rather than expands a district court's civil jurisdiction to construe a criminal statute. *See Morales,* 869 S.W.2d at 942, 945–47; *Guthrie,* —— S.W.3d at ——-——; *Trantham,* 218 S.W.3d at 752, 753–55; *City of La Mar-*

---

8. *See also Guthrie,* —— S.W.3d at ——-—— (District court lacked civil jurisdiction to render declaratory judgment that fire code "does not prohibit the transportation of consumer fireworks from one legal location outside the city limits of the City of Houston to another, even if the highway or roadway includes in whole or in part a purported [Limited Purpose Annexation]."); *Trantham,* 218 S.W.3d at 752, 753–55 (District court lacked civil jurisdiction to declare appellee's guilt in connection with alleged violation of criminal statute; a "declaratory judgment ... was an improper vehicle for determining Appellee's potential ... criminal liability."); *City of La Marque,* 216 S.W.3d at 863–64 (District court

lacked civil jurisdiction to render declaratory judgment that penal ordinance governing location of kennels did not apply to appellant's cat shelter); *Sterling,* 94 S.W.3d at 794 (District court lacked civil jurisdiction to address a "request for an interpretation of [a criminal statute] ... and a declaration that the use of his [eight liner] machines by the fire departments was not illegal under [the] Penal Code...."); *Warren,* 992 S.W.2d at 691 (District court lacked civil jurisdiction to render declaratory judgment that appellant's operation of eight liner device fell within exception to criminal statute prohibiting ownership, manufacture or possession of machine designed for gambling purposes).

*que,* 216 S.W.3d at 863–64; *Sterling,* 94 S.W.3d at 794; *Warren,* 992 S.W.2d at 691.[9]

The approach advocated by the Grand Jurors also is incompatible with the pragmatic justifications for the limits in Texas on civil jurisdiction to address criminal statutes. The mere "prospect" of having courts exercise civil jurisdiction to construe criminal statutes was deemed to be a "danger" in *Morales. Morales,* 869 S.W.2d at 948 n. 16. Here, the danger of confusion and conflict is far greater.

■ The Grand Jurors sought a declaration in the 190th District as to their potential criminal liability under article 20.02 while a petition for a show cause hearing was pending simultaneously in the 263rd District Court. The petition asserted that grand jurors Ryan and Dorrell violated article 20.02 "by making numerous illegal statements to members of the media and the public" regarding matters before the grand jury. A judgment from the 190th District Court containing the declarations requested by the Grand Jurors would create a direct conflict if the 263rd District Court were to find that the Grand Jurors violated article 20.02 and hold them in contempt. An appeal from a declaratory judgment signed by the 190th District Court would proceed in this court, and potentially in the Texas Supreme Court. Jurisdiction to review a contempt order entered by a district court in connection with criminal proceedings rests with the Court of Criminal Appeals by writ of habeas corpus. *See Ex parte Thompson,* 273 S.W.3d 177, 181 (Tex.Crim.App.2008). This scenario involving the issuance of competing pronouncements by different district courts exercising civil and criminal jurisdiction, and review of those competing pronouncements by different appellate courts, would set the stage for confusion and conflict with respect to criminal liability arising from disclosure of grand jury evidence under article 20.02. This is precisely the situation that the limits on civil jurisdiction are designed to avoid. *See Morales,* 869 S.W.2d at 947–48.

■ In further support of their second argument, the Grand Jurors contend that the limits on civil jurisdiction should not apply to them because the absence of a constitutional challenge to article 20.02 means they cannot "continue [their] activities until arrested and then procure [their] release by showing that the law is void" as contemplated in *Morales,* 869 S.W.2d at 945, and *Passel,* 440 S.W.2d at 63. Justice Guittard provides the response to this contention. *See Better Home Prods. of Tex., Co. v. City of Dallas,* 517 S.W.2d 373, 374 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.). "We acknowledge the force of the argument that a litigant desiring to test the applicability or validity of a penal ordinance . . . should be able to do so by the orderly process of civil litigation. . . ." *Id.* Justice Guittard also acknowledged such a litigant's desire to "not be put to the choice of either submitting to such regulation or exposing himself to the risk of criminal penalties." *Id.* "Nevertheless, civil courts do not sit to give advice." *Id.* For this

---

9. We also note that *City of Argyle's,* holding appears to be in tension with an earlier decision by the same court in *Trantham,* and with a memorandum opinion from the same court cited in *Trantham. See Trantham,* 218 S.W.3d at 753–54 ("Nor can a civil court issue a declaratory judgment to 'render naked declarations of rights, status or other legal relationships arising under a penal statute.' ") (quoting *Morales,* 869 S.W.2d at 947, and citing *Briar Voluntary Fire Dept.,* 2005 WL 1475409, at *2); *Briar Voluntary Fire Dept.,* 2005 WL 1475409, at *2 ("[I]n accord with the *Warren* court, we hold that because Appellant did not attack the constitutionality of the statute, which is required to give the civil court jurisdiction under *Morales* . . . the trial court did not err by holding that it had no jurisdiction to render a declaratory judgment.").

reason, unconstitutionality and irreparable injury must be established before a court exercising civil jurisdiction will "grant declaratory relief to avoid a criminal prosecution." *Id.* These words apply with equal force here.

Third, the Grand Jurors argue that they "sought no construction of any criminal statute from the court below" because they seek recognition of a "civil privilege" to disclose grand jury evidence rather than an interpretation of an existing statutory exception to grand jury secrecy under article 20.02.

We reject the Grand Jurors' third argument. Regardless of how the claimed "privilege" is characterized, the requested declarations expressly seek to insulate the Grand Jurors from criminal liability under article 20.02. In Plaintiffs' Third Amended Original Petition for Declaratory Judgment, the Grand Jurors assert that they "seek a declaration that they have a privilege to fairly respond to the defamatory attacks upon their character by revealing the overwhelming evidence considered by the Grand Jury...." The Grand Jurors contend they "should be able to do so without being prosecuted, sanctioned, fined, or jailed for violating Tex.Code Crim. Proc. art. 20.02." The Grand Jurors also request declarations that they "are not subject to the penalties of Tex.Code Crim. Proc. art. 20.02 for disclosing anything transpiring before the unlawfully constitut-

ed Grand Jury" after November 2, 2007 or for disclosing evidence "to another lawfully constituted Harris County grand jury meeting in secret and whose members are bound by the oath of secrecy."

These are requests to construe article 20.02 so that it is not enforceable against the Grand Jurors in certain circumstances. If the Grand Jurors were to succeed in obtaining these declarations from the 190th District Court, they would thereby obtain an impermissible declaration of their " 'rights' " and " 'status' " as persons who could not be prosecuted " 'under a penal statute' " in contravention of *Morales. See Morales,* 869 S.W.2d at 947 (quoting *Malone,* 278 S.W.2d at 206). The 190th District Court lacks civil jurisdiction to make "naked declarations" of this nature. *Id.*

We overrule the Grand Jurors' first three issues challenging the 190th District Court's order granting Rosenthal's motion to dismiss for lack of subject matter jurisdiction.[10]

## Conclusion

We affirm the 190th District Court's order granting the motion to dismiss for lack of subject matter jurisdiction.

**10.** Given our disposition of the first three issues, we do not reach the Grand Jurors' fourth issue addressing justiciability. In their fifth and final issue, the Grand Jurors contend that Rosenthal's jurisdictional challenge should have been framed as a plea in abatement based on concurrent jurisdiction. We reject the Grand Jurors' contention and their fifth issue because the jurisdictional issue here is not grounded on the existence of concurrent jurisdiction belonging to both the 263rd District Court and the 190th District Court. The issue here is a lack of civil jurisdiction that would allow the 190th District

Court to issue a declaratory judgment in the absence of allegations (1) challenging article 20.02's constitutionality, and (2) asserting irreparable harm. *See Morales,* 869 S.W.2d at 942, 947. We also reject the Grand Jurors' contention that Rosenthal's challenge to subject matter jurisdiction is foreclosed because he failed to deny the Grand Jurors' averment that all conditions precedent had been satisfied. "Subject matter jurisdiction is never presumed and cannot be waived." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993).