# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00596-CV

**The City of Houston, Appellant**

**v.**

**Texas Propane Gas Association, Appellee**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-001089, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The City of Houston appeals from the trial court's order denying its motion for summary judgment, in which the City asserts that the court lacks jurisdiction over claims for declaratory relief made by appellee Texas Propane Gas Association (TPGA). Because we determine that the trial court erred in concluding that TPGA met its burden to plead facts affirmatively demonstrating that it has associational standing to bring its claims, we will reverse and remand to the trial court to allow TPGA an opportunity to cure this pleading defect.

## BACKGROUND

Chapter 113 of the Texas Natural Resources Code, also known as the Liquefied Petroleum Gas (LP-Gas) Code, provides that the Railroad Commission of Texas "shall administer and enforce the laws of this state and the rules and standards of the commission relating to liquefied petroleum gas." Tex. Nat. Res. Code §§ 113.001-.011. Pursuant to its authority under the Code to "promulgate and adopt rules or standards," the Commission adopted the LP-Gas

Safety Rules.  *Id.* § 113.051; 16 Tex. Admin. Code §§ 9.1-.403 (Railroad Comm'n of Tex., LP-Gas Safety Rules).

In 2017 TPGA filed suit against the City challenging the legality of several "ordinances and regulations" that were passed by the Houston City Council in 2015 and which took effect in early 2016.  According to its petition, TPGA is a "trade association representing a statewide membership of companies and individuals actively engaged in the liquefied petroleum gas ('LP-gas' or 'propane') industry."  In general, the ordinances challenged by TPGA amended the City's Fire Code and placed new restrictions on the ability to store, use, handle, or dispense LP-Gas within the City's jurisdiction.  According to TPGA, the ordinances impose more restrictive conditions on the LP-Gas industry than those imposed by the Commission's LP-Gas Safety Rules.  TPGA sought a declaration that these ordinances and resulting regulations are invalid because they are pre-empted by Section 113.054 of the Texas Natural Resources Code and by the LP-Gas Safety Rules.  *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (Declaratory Judgments Act).  In relevant part, Section 113.054 states:

> The rules and standards promulgated and adopted by the [Railroad Commission] under section 113.051 preempt and supersede any ordinance, order, or rule adopted by a political subdivision of this state relating to any aspect or phase of the liquified petroleum gas industry.

Tex. Nat. Res. Code § 113.054.  Specifically, TPGA requested that the court declare the following:

> Those portions of City of Houston's Ordinance Nos. 2015-1108, 2015-1289, and 2015-1316, that adopted or amended Chapter 61 of the Houston Amendments of the 2012 International Fire Code or purported to otherwise regulate the LP-Gas industry, together with Chapter 61 of the Houston Amendments of the 2012 International Fire Code itself, . . . are invalid and ineffective to the extent they regulate to any aspect of the LP-Gas industry . . . .

2

In the alternative, TPGA requested declarations that certain portions of the City's regulations are invalid because they are more restrictive than the LP-Gas Safety Rules, including from Chapter 61 of the Fire Code: (1) "6101.02 relating to fees and permits, (2) "6101.2 and 6103.3 relating to aggregate water capacity of LP-Gas containers," (3) "6101.3 relating to the required submission of applications and/or construction documents," and (4) "6104.2 relating to maximum storage capacity within certain storage capacity within districts of limitation." TPGA also challenged what it contends are more restrictive provisions found in Chapter 1, entitled "Scope and Administration," generally setting out the procedural mechanisms for enforcing the Fire Code's substantive regulations.

TPGA subsequently filed a traditional motion for summary judgment on its claims against the City. *See* Tex. R. Civ. P. 166a. In response, the City filed a motion for summary judgment for lack of jurisdiction and a traditional motion for partial summary judgment. The trial court denied the parties' competing motions, including the City's motion for summary judgment for lack of jurisdiction. The City timely filed its notice of interlocutory appeal from the trial court's ruling on its jurisdictional challenge.[1] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). In three issues, the City asserts that the trial court erred in concluding that it has subject-matter jurisdiction to consider TPGA's claims.

---

[1] Generally, appeals may only be taken from final judgments and certain appealable interlocutory orders. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *see* Tex. Civ. Prac. & Rem. Code § 51.014 (listing appealable interlocutory orders). Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code provides for an interlocutory appeal from a grant or denial of a plea to the jurisdiction filed by a governmental unit. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). The Texas Supreme Court has construed the phrase "plea to the jurisdiction" in Section 51.014(a)(8) to mean a challenge to jurisdiction, "irrespective of the procedural vehicle used." *Thomas v. Long*, 207 S.W.3d 334, 349 (Tex. 2006); *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000) (recognizing that subject-matter jurisdiction may be challenged by motion for summary judgment). Here, the City brought its jurisdictional challenge in a motion for summary judgment, which the trial court expressly denied. As a result, we have jurisdiction to consider this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-45 (Tex. 1993)). A challenge to subject-matter jurisdiction may be raised in a plea to the jurisdiction or in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.Wd.3d 547, 553-54 (Tex. 2000). "A summary-judgment motion challenging jurisdiction may challenge either the pleadings or the existence of jurisdictional facts." *Lazarides v. Farris*, 367 S.W.3d 788, 797 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004), and applying standard of review to denial of motion for summary judgment challenging subject-matter jurisdiction). When the movant challenges the pleadings, we determine if the plaintiff has met his burden to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. In conducting this review, we construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.* (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). If the plaintiff has not affirmatively pleaded facts to support jurisdiction or negate jurisdiction, the matter is one of pleading sufficiency, and the court should provide the plaintiff with the opportunity to amend its pleadings to cure jurisdictional issues. *Id.* at 226-27. But if the pleadings affirmatively negate the existence of jurisdiction, the motion should be granted. *Id.*

In addition, we may consider evidence that the parties presented below and must do so when necessary to resolve jurisdictional issues. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 547. When a motion for summary judgment challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties to resolve the jurisdictional issues

4

raised. *Miranda*, 133 S.W.3d at 226. If a fact question is presented by the evidence regarding a jurisdictional issue, the trial court is precluded from granting summary judgment on the jurisdictional challenge. *Id.* at 227-28; *Lazarides*, 367 S.W.3d at 797. When the relevant evidence is undisputed or fails to raise a fact issue on the jurisdictional issue, the court should grant or deny the motion for summary judgment as a matter of law. *Miranda*, 133 S.W.3d at 228; *Lazarides*, 367 S.W.3d at 797.

Whether a trial court has subject-matter jurisdiction is a question of law, which we review de novo. *Miranda*, 133 S.W.3d at 228. "Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.).

## DISCUSSION

*Standing*

In its first and third issues on appeal, the City contends that the trial court erred in denying its jurisdictional challenge on grounds that there is no justiciable controversy between the parties. *See Texas Quarter Horse Ass'n v. American Legion Dep't of Tex.*, 496 S.W.3d 175, 180 (Tex. App.—Austin 2016, no pet.) (referring to doctrines of ripeness, mootness, and standing as justiciability doctrines derived from Texas Constitution). Specifically, in its first issue, the City asserts that the relevant pleadings and jurisdictional evidence fail to establish that TPGA has standing to sue as an organization on behalf of its members. In its third issue, the City argues that the relevant pleadings and jurisdictional evidence fail to establish that TPGA's claims are not ripe or, alternatively, are moot. We turn first to the City's arguments with respect to standing.

5

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist*, 34 S.W.3d at 553-54. A plaintiff must demonstrate standing for each of his claims, and the court must dismiss any claim for which it lacks jurisdiction. *Heckman v. Williamson County,* 369 S.W.3d 137, 150 (Tex. 2012) (citing *Andrade v. NAACP*, 345 S.W.3d 1, 14 (Tex. 2011)). The general test for constitutional standing in Texas is whether there is a "real" (i.e., justiciable) controversy between the parties that will actually be resolved by the judicial declaration sought. *Texas Ass'n of Bus*., 852 S.W.2d at 446. The requirement of standing is derived from the Texas Constitution's separation-of-powers provision, which denies the judiciary authority to decide cases in the abstract, and from the open-courts provision, which provides court access only to a "person for an injury done him." *Meyers v. JDC/Firestone, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (citing Tex. Const. art. I, § 13). "An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury." *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

Standing is a constitutional prerequisite to filing suit for both individuals and associations. *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007). When, as in this case, an association sues on behalf of its members, the association's standing is established by a three-prong test established by the United States Supreme Court in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977). *See Texas Ass'n of Bus.*, 852 S.W.2d at 447 (adopting *Hunt* test for associational standing). Under this test, an association must demonstrate that (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members. *Id.*

6

(quoting *Hunt*, 432 U.S. at 343). In its motion and on appeal, the City has focused its arguments on whether TPGA has adequately shown that it meets the first prong of the *Hunt* test.

The purpose of the first prong is "simply to weed out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation." *Id.* (quoting *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1988)). An association plaintiff satisfies this prong by showing that "at least one of the organization's members has standing individually." *Save Our Springs All.*, 304 S.W.3d at 878. That is, the plaintiff must first demonstrate that at least one of its members has suffered an "injury in fact"— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Meyers*, 548 S.W.3d at 485 (laying out federal test for standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), noting similarity to elements of standing under Texas law); *see Save Our Springs All.*, 304 S.W.3d at 878, 882-84 (applying federal test under *Lujan* to analyze associational standing under first prong of *Hunt* test). Second, the plaintiff must demonstrate that the injury is fairly traceable to the challenged action and, third, is likely to be redressed by the requested relief. *Id.* When, as in this case, the suit challenges governmental action, the plaintiff must show that the injury is distinct from that sustained by the public at large. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555-56; *Lomas*, 223 S.W.3d at 307.

In its pleadings, TPGA alleges that one of its members, Green's Blue Flame Gas Company, Inc., became involved on a project that included installation of an LP-Gas tank "to fuel buses serving the Texas Medical Center." "During the course of this project, [an inspector from the Houston Fire Marshall's Office] refused to evaluate the LP-Gas installation under the LP-Gas Safety Rules and instead imposed inapplicable and more restrictive conditions and

7

requirements from Houston's Fire Code and the 2006 and 2012 International Fire Codes simply on the basis that the inspector 'felt' that they were 'relevant and increased public safety.'" According to TPGA's allegations, although Green's Blue Flame Gas had filed the form for installation required with the Railroad Commission, the inspector refused to issue a permit beyond 90 days and charged Green's Blue Flame Gas Company $2,180 in permitting fees. These undisputed allegations, taken as true, demonstrate that at least one member of the association has already been assessed fees for a permit that is currently required by Chapter 61 of the Houston Fire Code but not by the rules promulgated by the Railroad Commission. We conclude that TPGA has satisfied the first prong of the *Hunt* test for associational standing to the extent TPGA is challenging this permitting requirement on LP-Gas.

In its pleadings, TPGA also generally alleges that inspectors have reviewed projects involving installation of LP-Gas tanks and have issued red tags for "unspecified violations of Houston's Building Code" to unspecified persons. In one instance, a City inspector issued a "red tag" and directed a home owner to remove a propane bottle from under a mobile home, and in another instance, an inspector served a "Notice of Deficiencies" on a homeowner, a customer of a TPGA member, related to an LP-Gas tank used to fuel a pool heater. Similarly, TPGA describes an incident where another customer of a TPGA member installed "a rack housing" for LP-Gas cylinders and was later notified by an inspector that an operational permit was required based on the number and capacity of cylinders installed. In describing these instances, TPGA's pleadings fail to explain how any TPGA member, *as opposed to its customer*, has suffered an injury "fairly traceable" to enforcement of what it contends are invalid regulations on LP-Gas. *See Save Our Springs All.*, 304 S.W.3d at 878 (laying out Supreme Court's test for individual standing under first prong of test for associational standing and

8

concluding that allegations of harm to environmental, scientific, or recreational interests of members who did not possess property interest in or in connection to real property involved in development agreements were insufficient to demonstrate injury distinct from general public). To the extent TPGA is suggesting that members will suffer an indirect economic impact as a result of regulatory burdens placed on their customers or others, TPGA has failed to sufficiently plead facts demonstrating a particularized injury from the challenged regulations. *See Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 929 (Tex. App.—Austin 2010, no pet.) (explaining that indirect economic injury resulting from regulations placed on plaintiff's customers is substantially more difficult to establish than direct injury and that plaintiffs claiming that challenged ordinance "discourage[d] tourists from visiting," and thus had "chilling effect" on their businesses, failed to meet burden).

Although, as previously discussed, TPGA has established that at least one of its members has suffered an "injury in fact" that is "fairly traceable" to permitting requirements imposed by the City, TPGA's challenge to the ordinances is not limited to permitting requirements. Instead, in its pleadings to the trial court, TPGA broadly requests a declaration that "those portions of the City of Houston's [ordinances] that adopted or amended [Chapter 61] or purported to otherwise regulate the LP-Gas industry, together with [Chapter 61] itself . . . are invalid and ineffective to the extent they relate to any aspect of the LP-Gas industry." The City argues that because standing must be examined on a claim-by-claim basis and because the TPGA effectively seeks a declaration that all LP-Gas regulations promulgated by the City are invalid, TPGA must establish associational standing as to each regulation but has failed to do so. *See Heckman*, 369 S.W.3d at 153, 156. In response, TPGA explains that is has sufficiently established associational standing as to each of its claims because it effectively has only one

claim: a declaration that the Railroad Commission's LPG Safety Rules "preempt and supersede *any* ordinance, order, or rule adopted by a political subdivision of this state relating to any aspect or phase of the liquefied petroleum gas industry." (Emphasis added.). In other words, in TGPA's view, its sole claim is a challenge to the City's regulation of LP-Gas as a whole, and it has sufficiently demonstrated that at least one or more of its members has suffered injury as result of that regulation.

In effect, TPGA challenges all of the City's regulations "relating to" the LP-Gas industry. Thus, to demonstrate that the first prong for associational standing has been satisfied as to TPGA's sole claim—as it has been framed by TPGA—the pleadings and evidence must demonstrate that at least one of its members has suffered a particularized injury, distinct from the general public, that is "fairly traceable" to each of the City's regulations relating to the LP-Gas industry—whatever TPGA contends those are—that the requested declaration will "redress." *See Meyers*, 548 S.W.3d at 485. Based on our review of the pleadings, liberally construed and taken as true, we cannot conclude that this burden has been satisfied.

In its pleadings, TPGA does not specifically identify for the trial court which regulations "relat[e] to" the LP-Gas industry or where those regulations are found in the City Code, other than to assert that the entirety of Chapter 61 of the Fire Code consists of impermissible regulations. Similarly, TPGA does not identify what, if anything, the City's regulations require of TPGA members and it and has not pleaded any facts demonstrating an injury from direct restrictions imposed on its members, apart from the one previously mentioned permitting requirement. Because TPGA has not identified what action or inaction is required by the regulations and from whom, we cannot evaluate whether a member of TPGA has suffered or imminently will suffer an invasion of "some 'legally protected' interest that is sufficiently unique

10

to the member, as distinguished from the general public," as a result of the challenged regulatory scheme. *See Stop the Ordinances Please*, 306 S.W.3d at 929. Similarly, because the relief requested, on its face, does not ask the trial court to determine which regulations, if any, qualify as being sufficiently "relat[ed] to any aspect or phase of the liquefied petroleum gas industry," we cannot conclude that the relief requested by TPGA would effectively redress any injury caused by the City's regulations related to LP-Gas.

In conclusion, TPGA has failed to demonstrate the members it represents have a sufficient personal stake in the controversy such that "the lawsuit would not yield a mere advisory opinion or draw the judiciary into generalized policy disputes that are the province of other branches." *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 833 (Tex. App.—Austin 2010, no pet.) (citing *Save Our Springs All.*, 304 S.W.3d at 871 (concluding that association members had not established injury distinct from that of general public)). However, because this defect is a matter of pleading sufficiency, we will reverse and remand to the trial court to allow TPGA an opportunity to cure the pleading defect, unless one of the City's remaining issues requires that we reverse and render judgment in favor of the City. *See* Tex. R. App. P. 43.3. Accordingly, we turn to the City's remaining appellate issues.

*Ripeness and Mootness*

Next, we consider the City's argument that the trial court lacks subject-matter jurisdiction because TPGA's claims are not ripe or, alternatively, have become moot. Like standing, ripeness and mootness doctrines concern whether a justiciable controversy exists between the parties and serve to bar the court from issuing advisory opinions. *Texas Quarter Horse Ass'n*, 496 S.W.3d at 180. Under the ripeness doctrine, a court must "consider whether, at the time the lawsuit is filed, the facts are sufficiently developed 'so that an injury has occurred or

11

is likely to occur, rather than being contingent or remote.'" *Id.* (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000)). Conversely, the mootness doctrine applies when a justiciable controversy existed between the parties at the time the case arose, but the live controversy no long exists because of subsequent events. *Id.*

In this case, the City's mootness and ripeness theories turn on an exception to preemption found in Section 113.054. Specifically, Section 113.054, which is the basis of TPGA's preemption claim, states in relevant part:

> A political subdivision may petition the commission's executive director for permission to promulgate more restrictive rules and standards only if the political subdivision can prove that the more restrictive rules and standards enhance public safety.

Tex. Nat. Res. Code § 113.054. According to TPGA, there is no dispute that the Railroad Commission has not adopted any formal petition process, and therefore, the City does not have any "formal opportunity to save its propane regulations and ordinances from preemption under this [exception]." In the City's view, the Court cannot enforce the alleged restrictions of Section 113.054 "without also affording the City its statutory protections." Thus, unless and until a formal petition process is implemented by the Commission, TPGA's claims are not ripe. Similarly, in the alternative, the City asserts that the summary-judgment evidence shows that it has in fact received informal permission from the Commission to continue to enforce its local ordinances and regulations related to LP-Gas. The City reasons that this evidence establishes that the statutory exception to preemption has been met and that, as a result, TPGA's claims have become moot.

The issue of whether the City has met the statutory exception under Section 113.054 by receiving permission from the Commission to promulgate the challenged ordinances

12

and regulations is an issue to be resolved in the lawsuit and goes to the merits of TPGA's claim. To the extent the City argues that it has been effectively prevented from obtaining permission under Section 113.054 by the Commission's failure to implement a formal process, we conclude that this has no effect on the trial court's power to decide the immediate issues in this dispute: whether the challenged ordinances and regulations are preempted by Section 113.054 and, if so, whether the ordinances and regulations are excepted from preemption because the City has obtained permission from the Commission "to promulgate more restrictive rules and standards." Finally, the City's assertion that the evidence establishes that it in fact received permission from the Commission through informal measures is, in effect, an argument that the evidence establishes that it has met the statutory exception and that TPGA cannot, as a matter of law, prevail on the merits of its suit. Because the City's arguments regarding the statutory exception go to the merits of the case and not to the court's power to decide the case, the City's third issue on appeal is overruled.

*Jurisdiction of Civil Courts over Penal Ordinances*

Finally, we turn to the City's second appellate issue. In this issue, the City asserts that the trial court erred in denying its motion for summary judgment for lack of jurisdiction because the ordinances and regulations at issue are penal in nature and, as a result, the civil trial court does not possess jurisdiction to determine their validity.

Texas courts have long recognized that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction. *See State v. Morales*, 869 S.W.2d 941, 945 (Tex. 1994); *City of New Braunfels v. Stop the Ordinances Please*, 520 S.W.3d 208, 212 (Tex. App.—Austin 2017, pet. denied); *City of La Marque* v. *Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Sterling v.*

13

*San Antonio Police Dep't*, 94 S.W.3d 790, 793 (Tex. App.—San Antonio 2002, no pet.). This constraint on civil courts is grounded in both pragmatism, i.e., a need to avoid conflicting decisions by Texas high courts in Texas's bifurcated judicial system, and in longstanding limitations imposed on equity jurisdiction and thus, the "very balance of state governmental power imposed by framers of the Texas Constitution." *Morales*, 869 S.W.2d at 944, 947-48; *see City of New Braunfels*, 520 S.W.3d at 212; *Ryan v. Rosenthal*, 314 S.W.3d 136, 142 (Tex. App.—Houston [14th Dist.] 2010, no pet.). If the meaning and validity of a criminal statute or ordinance can be resolved in a criminal proceeding "and vested property rights are not in jeopardy," then a court of equity should not intervene. *Consumer Serv. All. of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 804 (Tex. App.—Dallas 2014, no pet.) (quoting *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex. 1969)). "A person may continue his activities until he is arrested and then procure his release by showing that the law is void." *Id.*

When a penal statute or ordinance is being enforced and the plaintiff is being prosecuted or the threat or prosecution is imminent, an equity court will not interfere with the ordinary enforcement of the statute or ordinance unless (1) the statute or ordinance is unconstitutional and (2) its enforcement will result in irreparable injury to vested property rights. *Id.* This limitation on jurisdiction applies not only in suits where the plaintiff seeks to enjoin enforcement but also in suits seeking a declaratory judgment as to the constitutionality of the statute or ordinance. *Morales*, 869 S.W.2d at 947; *Ryan*, 314 S.W.3d at 142 ("The considerations that lead courts of equity to deny injunctive relief against enforcement of the criminal laws apply with equal force to an action for a declaratory judgment construing a penal statute.").

Recently, in *City of Laredo v. Laredo Merchants Association*, 550 S.W.3d 586 (Tex. 2018), the Texas Supreme Court considered whether the civil courts had jurisdiction in

14

a suit that challenged an ordinance prohibiting the use of certain non-compliant plastic bags by vendors. In deciding that the exercise of civil jurisdiction was proper in the suit, the court recognized that the challenged ordinance (the violation of which constituted a class C misdemeanor, punishable by a fine of up to $2,000 per violation) was penal in nature and therefore could only be enjoined or declared void if there was "a threat of irreparable injury to vested property rights." *Id.* at 592 n.28 (citing *Morales*, 869 S.W.2d at 945). The Texas Supreme Court concluded that this exception had been met, and therefore the challenge to the penal ordinance could be brought in civil court, because the ordinance imposed "a substantial per violation fine that effectively preclude[d] small local businesses from testing the ban's constitutionality in defense to a criminal prosecution." *Id.* (citing *City of Austin v. Austin City Cemetery Ass'n*, 28 S.W. 528, 529-30 (Tex. 1894)).

Here, the dispute on appeal centers on whether the ordinances and regulations at issue are penal in nature and, if so, whether their enforcement will result in irreparable injury to vested property rights. The City argues that Sections 104 and 109 of the Fire Code, found in Chapter 1, provide the enforcement mechanism for any substantive requirements in the Fire Code, including Chapter 61, and that these provisions make clear that violations of the Fire Code are punishable as criminal offenses. In response, TPGA asserts that the challenged LP-Gas regulations are not criminal regulations because they do not, on their face, impose criminal penalties or criminalize certain conduct.

Assuming without deciding, however, that the challenged ordinances and regulations are penal in nature, we conclude that the trial court did not err in determining that it has jurisdiction over TPGA's claims. Section 109.4 of the City's Fire Code provides that the doing of any act that the Fire Code declares to be unlawful, and for which no specific penalty is

15

provided, "shall be punished by a fine of not less than $500.00 and no more than $2,000.00" and that "each day any violation of this code shall continue shall constitute a separate offense." Based on this per day-violation fine and on the Texas Supreme Court's recent decision in *City of Laredo*, we must conclude that TPGA members are "effectively preclude[d]" "from testing the ban's constitutionality in defense to a criminal prosecution." *See id.* Because there is a "threat of irreparable injury to vested property rights," TPGA's suit to declare certain Fire Code regulations invalid may be brought in civil court. *See id.* (citing *Morales*, 869 S.W.2d at 945). We overrule the City's second issue on appeal.

## CONCLUSION

Because TPGA failed to plead facts affirmatively demonstrating subject-matter jurisdiction, we conclude that the trial court erred in denying the City's motion for summary judgment for lack of jurisdiction and reverse the trial court's order. We also conclude, however, that TPGA's pleadings do not affirmatively negate the existence of subject-matter jurisdiction. Accordingly, we remand this cause so that TPGA may have a reasonable opportunity to amend its pleadings, if possible, to demonstrate that it has standing to bring its suit for declaratory relief.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith
  Dissenting Opinion by Chief Justice Rose

Reversed and Remanded

Filed:  July 18, 2019

16