**Opinion issued February 25, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00251-CV

————————————

## IN RE: TEXAS STATE SILICA PRODUCTS LIABILITY LITIGATION

On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Case No. 2004-70000

## MEMORANDUM OPINION

This is an appeal of a denial of a temporary injunction in a pretrial

multidistrict litigation for silica products-liability claims.[1] Plaintiffs are over 100

---

[1] Ordinarily, Texas appellate courts have jurisdiction only over final judgments. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 92 (Tex. 2012). An exception exists when a statute authorizes an interlocutory appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). The Civil Practice and Remedies Code provides for an interlocutory appeal from an order that "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as

sandblasters who were exposed to silica in their workplaces. The sandblasters sought to enjoin enforcement of Sections 90.004 and 90.010 of the Civil Practice and Remedies Code that specify what must be included in their medical reports to allow them to exit the multidistrict litigation court and return to their respective trial courts for a trial on the merits. The sandblasters argue that these provisions violate due process because they are unconstitutionally vague and oppressive and violate the open courts provision of the constitution by applying retroactively to their already-pending claims. Defendants are manufacturers, producers, designers, distributors, and sellers of silica-related products. They moved to dismiss the injunction request, contending that the sandblasters lacked standing and their challenge was not yet ripe for judicial determination.

The MDL court granted Defendants' motion and dismissed the sandblasters' constitutional challenge without specifying the basis for its ruling. The sandblasters appeal the denial of their temporary injunction request.

Because a temporary injunction is not an available vehicle to obtain the relief sought by the sandblasters, we affirm the trial court's order denying their temporary injunction motion.

---

provided by Chapter 65." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2015). Here, the MDL court refused a temporary injunction, and we, therefore, have appellate jurisdiction. *See id.*

## Background

The sandblasters are plaintiffs in a statewide MDL for silica products liability litigation. A Rule 13 pretrial MDL was created in 2004 when the Judicial Panel on Multidistrict Litigation determined that the then-pending 71 suits filed by 453 plaintiffs against 158 defendants "involve one or more common questions of fact" and "transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases." *In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3 (Tex. M.D.L. Panel 2004).

In 2005, the Legislature enacted Chapter 90 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 90.001−.012 (West 2011 and Supp. 2015); Act of May 16, 2005, 79th Leg., R. S., ch. 97, § 1, 2005 Tex. Gen. Laws 169. The new legislation created a statutory MDL for silica- and asbestos-related claims. Act of May 16, 2005, 79th Leg., R. S., ch. 97, § 1, 2005 Tex. Gen. Laws 169. Under the terms of the statute, individual cases are held in the MDL until the plaintiffs submit medical reports that meet all listed, statutory requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 90.003 (requirements for asbestos-related claims); § 90.004 (requirements for silica-related claims). After a qualifying medical report is submitted and approved by the MDL court, a case may be returned to a district court for trial. *Id.* § 90.010.

All of the sandblasters had suits pending in the Rule 13 MDL when Chapter 90 was enacted. Their claims were then transferred to the statutory MDL where they have remained for 10 years.

### *The purpose behind Chapter 90*

The Legislature included official comments when it enacted Chapter 90. Act of May 16, 2005, 79th Leg., R. S., ch. 97, § 1, cmts. a–n, 2005 Tex. Gen. Laws 169. According to the official comments, individuals who have been exposed to silica may have "markings on [their] lungs that are possibly consistent with silica exposure, but the individual has no functional or physical impairment from any silica-related disease." *Id.*, cmt. m (regarding silica exposure); *see id.*, cmt. f (similar provision related to asbestos). The discovery of these markers can trigger a statute of limitations problem for the individuals. *Id.* This led to a "crush" of suits being filed in the courts on behalf of workers who show some signs of exposure but still have "no current impairment and may never have impairment." *Id.*, cmts. g, h, and m.

The large number of filings was described as a "situation [that] has reached critical dimensions and is getting worse." *Id.*, cmt. d (citing Judicial Conference Ad Hoc Committee on Asbestos Litig. (1991)). To "prevent[] scarce judicial and litigant resources from being misdirected by the claims of individuals who have been exposed to asbestos or silica but have no functional or physical impairment

from asbestos-related or silica-related disease," the Legislature enacted Chapter 90, aimed at "protect[ing] the right of people with impairing asbestos-related and silica-related injuries to pursue their claims for compensation in a fair and efficient manner through the Texas court system," but creating a bifurcated system that allows those with confirmed impairment to proceed to trial while those without a confirmed impairment to remain in the MDL, without any statute of limitations ramifications, until an impairment is confirmed. *Id.*, cmt. n; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(d) (providing that cases remain in MDL without dismissal until qualifying impairment is established); § 90.010(*l*) (providing that pre-2005 silica suits that are dismissed for failure to file compliant medical reports after September 1, 2014, are dismissed without prejudice); § 90.010(n) (further providing that such dismissed claims may be refiled after dismissal and, if refiled, "treated for purposes of determining the applicable law as if that claimant's action had never been dismissed but, instead, had remained pending until the claimant served a report that complied . . . .").

### *Section 90.004*

Section 90.004 specifies the information that must be included in the medical report for a silicosis claim. *Id.* § 90.004.[2] The provision requires that a qualifying physician verify that she (or a medical professional under her direct

---

[2]     *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 90.003 (listing medical-report requirements for asbestos-related claims).

supervision and control) performed a physician exam and obtained a detailed occupational and exposure history—including the claimant's principal employments, exposure to airborne contaminants, and the "nature, duration, and frequency" of that exposure—as well as a detailed medical and smoking history and explain, within the report, the claimant's "occupational, exposure, medical, and smoking history." *Id.* §§ 90.004(a)(1)–(2), (e).

The physician must also verify that the claimant has "one or more" of the following: "(A) a quality 1 or 2 chest x-ray that has been read by a certified B-reader according to the ILO system of classification as showing: (i) bilateral predominantly nodular opacities (p, q, or r) occurring primarily in the upper lung fields" with a specified "profusion grading" and/or "(B) pathological demonstration of classic silicotic nodules exceeding one centimeter in diameter as published in 'Diseases Associated with Exposure to Silica and Nonfibrous Silicate Minerals,' 112 Archives of Pathology and Laboratory Medicine 7 (July 1988)" and/or "(C) progressive massive fibrosis radiologically established by large opacities greater than one centimeter in diameter" and/or "(D) acute silicosis." *Id.* § 90.004(a)(3).

In addition to these verifications, detailed statements, and medical conclusions, the physician's report must be "accompanied by copies of all ILO classifications, pulmonary function tests, including printouts of all data, flow

volume loops, and other information demonstrating compliance with the equipment, quality, interpretation, and reporting standards set out in this chapter, lung volume tests, diagnostic imaging of the chest, pathology reports, or other testing reviewed by the physician in reaching the physician's conclusions." *Id.* § 90.004(a)(4).

The statute further requires the physician to verify that there has been a sufficient latency period, the claimant has "at least Class 2 or higher impairment due to silicosis, according to the American Medical Association Guides . . . reported in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part (A), Sections 3.00(E) and (F) (2003)," and the physician has concluded that the medical findings and impairment "were not more probably the result of causes other than silica exposure" as possibly signified by the claimants' occupational, exposure, medical, and smoking history. *Id.* § 90.004(b). If the claim is for silica-related lung cancer or another silica-related disease, other requirements are specified. *Id.* §§ 90.004(c)–(d).

Thus, the statute incorporates into its provisions the AMA Guides, federal regulations concerning appropriate testing to establish a respiratory impairment,[3] and a medical article published in the Archives of Pathology and Laboratory Medicine. *Id.* § 90.004.

---

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1, Part (A), Sections 3.00(E) and (F) (2003).

***Section 90.010***

Section 90.010 directs when a case may transfer out of the statutory MDL back to a trial court. *Id.* § 90.010. The provision specifically states that it applies to cases that were pending in the Rule 13 MDL when Chapter 90 was enacted. *Id.* § 90.010(a). Thus, its provisions apply to all of these sandblaster suits.

Section 90.010 requires the statutory MDL judge to retain jurisdiction over the pending silicosis suits and not remand them for trial until the individual claimants file medical reports that comply with Section 90.004 or, alternatively, with a limited "safety valve" provision found in Section 90.010(f). *Id.* § 90.010(d); *see id.* §§ 90.010(f)–(j). Until a qualifying report is filed and approved, the cases are considered inactive. There have been many cases on this inactive docket for several years.

Section 90.010(k) requires the silica MDL judge to present a report to the governor, lieutenant governor, and speaker of the house five years after the statute was enacted detailing the total number of cases on the docket as well as the number of those cases that do not meet the criteria for a Section 90.004 complaint medical report; stating the court's "evaluation of the effectiveness of the medical criteria established by Section . . . 90.004"; providing the court's recommendations "as to how medical criteria should be applied"; and including any other administration information the statutory MDL court deems appropriate. *Id.* § 90.010(k).

### *Silica MDL judge's Section 90.010(k) report*

The silica MDL judge submitted a report on September 1, 2010, as required.[4] The judge declined to comment on policy issues related to the statute:

> [A]s to whether the criteria themselves or the minimum levels of impairment are appropriate, I am not in a position to ethically opine. This is more appropriately a matter for the law makers . . . . It all depends on what the law makers of Texas believe the definition of "impairment" should be to allow a claimant to proceed in court in these cases.

However, the court did provide statistical information regarding the progression of the docket. As on August 1, 2010, there were 667 cases in the silica MDL representing 5,839 "exposed persons." Only 54 of the "exposed persons" had filed medical reports under Section 90.004. Only half of those had been submitted to the MDL court for evaluation:

| | | |
|---|---|---|
| Exposed persons who have filed a medical report for evaluation | 54 | |
| Number of those that have been, not just filed but also, submitted to the judge | 26 | |
| *Approved* | | *22* |
| *Not yet determined* | | *1* |
| *Defendant objections sustained* | | *3* |
| Number of those filed that have not yet been determined because either they were withdrawn or just never submitted | 28 | |

For the remaining 5,785 "exposed persons," no medical report had yet been filed.

---

[4]    http://www.justex.net/JustexDocuments/24//Section%2090.010%28k%29%20 Report.pdf

### *Section 90.010(d–1) dismissal procedure*

In 2013, the Legislature amended Section 90.010 to establish a procedure for dismissing silica cases that have been on file since before the 2005 legislation was enacted and still have not submitted compliant medical reports. TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(d–1) (West Supp. 2015). The new Subsection (d–1) provides as follows:

> Beginning on September 1, 2014, the MDL pretrial court shall dismiss each action for . . . a silica-related injury that was pending on August 31, 2005, unless a report was served on or after September l, 2013, that complies with . . . Section 90.004, or Subsection (f). The MDL pretrial court shall provide for the dismissal of such actions in a case management order entered for that purpose. All [such] actions . . . shall be dismissed on or before August 31, 2015. . . .

*Id.* Along with the new Subsection (d–1), the Legislature provided that dismissal would be without prejudice to the filing of a subsequent action and that any refiled action would be treated as through it had never been dismissed. *Id.* §§ 90.010(*l*)–(n).

### *Sandblasters challenge Chapter 90 as unconstitutional*

Before the September 1, 2014 deadline, the sandblasters filed a request for injunctive relief, seeking to enjoin enforcement of Sections 90.004 and 90.010.[5] The sandblasters asserted that the requirement that they comply with the medical

---

[5]  In 2007, one of the MDL plaintiffs, Mr. Olivas, filed a constitutional challenge to Section 90.004. That challenge became moot, though, when the defendants withdrew their objections to Olivas's medical report.

report obligation is "oppressive and unreasonable." According to them, it is nearly impossible to comply with the statutory requirements because the criteria to establish a qualifying impairment is listed, not within the statute, but by reference to American Medical Association medical guidelines and literature cited therein, which are continuously evolving in ways that have altered both the standards for demonstrating an impairment and the tests necessary to support a medical conclusion that a sandblaster has a qualifying impairment.

The sandblasters contend that "their medical reports have to be rewritten" with each change to the AMA guidelines. Each new report is costly and delays the prosecution of their claims, thereby increasing the risk that the defendant-entities will not have funds left to satisfy judgments once the sandblasters eventually meet the criteria for remand and trial. The sandblasters present their constitutional challenge as a facial challenge to the statute, meaning that the statute, by its terms, always operates unconstitutionally. *See New York State Club Ass'n v. New York City*, 487 U.S. 1, 11, 108 S. Ct. 2225, 2233 (1988).

The sandblasters' challenges to Sections 90.004 and 90.010 can be grouped into two constitutional arguments.

### 1. Open courts challenge

The sandblasters argue that Section 90.004 significantly impedes their ability to pursue damages claims for their pre-existing silica-related disabilities, in

violation of the Open Courts provision of the Texas Constitution. They claim that Chapter 90 significantly limits their existing common-law claims by imposing new hurdles for demonstrating an impairment that were not required under the common law. Further, Chapter 90 does not recognize a sandblaster as impaired until he rises to the level of "class 2" impaired. Thus, Chapter 90, according to the sandblasters, prevents recovery of common law damages for less impaired claimants that would have been available under the common law, such as lost earning capacity to compensate for a "vocational disability" suffered by a lower-level impaired worker. They further contend that applying these requirements retroactively to their already-pending claims violates the Open Courts provision.

## 2. Substantive due process challenge

The sandblasters also argue that the statute should require no more than that a qualified physician provide a medical opinion that a worker has, in reasonable medical probability, a silica-related impairment, based on the physician's understanding of the prevailing scientific standards and related medical literature. They argue that the statute removes the ability of a qualified doctor to make this determination based on his assessment of the appropriate, necessary requirements for a reliable diagnosis and, instead, demands compliance with pre-specified scientific standards and medical literature written into the statute. According to the sandblasters, the task of determining if the worker has established an impairment

was transferred from medical professionals to the MDL court. Furthermore, they contend, because the statutorily-referenced medical literature was intended only to be a guide for medical practitioners—not a legal standard for compensability—it is continuously evolving and, as a result, its requirements are, over time, contradictory. According to the sandblasters, each time the Guides change, what is necessary to comply with the medical-report requirements also changes.[6] The sandblasters contend that, because the science is evolving and the literature is complex, detailed, and changing, the statute is unconstitutionally vague and violates due process.

The sandblasters sought to prospectively enjoin the statute's enforcement, using a pleading entitled "Plaintiffs' Motion to Enjoin Enforcement of Sections 90.004 and 90.010 of the Texas Civil Practice & Remedies Code because the Statute is Unconstitutional and Plaintiffs' Request for Permanent Injunction Declaring Sections 90.004 and 90.010 Unconstitutional."

Defendants responded, raising jurisdictional arguments that the sandblasters lack standing and their complaints are not ripe for judicial determination. Defendants' motion to dismiss the request for injunctive relief, in which they

---

[6]     The sandblasters acknowledge that the MDL court previously advised that new editions of the AMA Guides will apply but only to newly performed testing and that earlier editions will continue to apply to testing performed when those were in effect.

challenge standing and ripeness, states that "the merits of Plaintiffs constitutional complaints are not at issue at this juncture . . . ."

The trial court granted the defendants' motion to dismiss and, through an amended order, denied the temporary injunction.[7] The order specifically states that the injunctive request is being denied because the court granted the jurisdictional challenge to that request. In other words, the temporary-injunction motion was not denied on the merits.

The sandblasters filed a direct appeal with the Texas Supreme Court, which dismissed the appeal. The sandblasters then filed an appeal with this Court, challenging the MDL pretrial court's refusal to grant a temporary injunction.

---

[7] The parties agreed that the motion would be treated as a request for a temporary injunction instead of a permanent injunction, and the trial court accepted the motion accordingly. Throughout the record, the trial court and parties have expressed their agreement that the trial court intended to deny a temporary injunction and that the denial would be subject to interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2015). After the injunction request was denied and the sandblasters appealed, the defendants filed a motion to dismiss the appeal, arguing that the MDL court's order of dismissal referenced a pending request for *permanent* injunction and that permanent injunctions are not subject to interlocutory appeal under Section 51.014(a)(4).

We reject the argument that the wording of the order overrules the intended action of the MDL court. First, the order specifically references a pending "request for temporary injunction." Second, the trial court described the pleading filed as a "motion to enjoin enforcement of Section 90.004 and 90.010" as well as a "request for permanent injunction." That phrasing does not confine the resulting order such that it could not have been addressing anything other than the permanent injunction request, especially in light of the agreement that the motion before the court was the sandblasters' request for a temporary injunction. We overrule the defendants' motion to dismiss that is based on its permanent injunction theory.

14

## Requirements for a Temporary Injunction

"An injunction is a remedial writ that depends on the issuing court's equity jurisdiction." *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000). "A temporary injunction is an extraordinary remedy, the purpose of which is 'to preserve the status quo of the litigation's subject matter pending a trial on the merits.'" *City of Houston v. Downstream Environmental, L.L.C.*, No. 01-13-01015-CV, 2014 WL 5500486, at *3 (Tex. App.—Houston [1st Dist.] Oct. 30, 2014, pet. dism'd) (mem. op.) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204; *see* TEX. R. CIV. P. 682.

To be effective, an injunction is required, by rule, to satisfy certain content requirements. Rule 683 requires that it "describe in reasonable detail" "the act or acts sought to be restrained." TEX. R. CIV. P. 683. Rule 687 adds the requirements that the injunction "shall be directed to the person . . . enjoined" and "command the person . . . to whom it is directed to desist and refrain from the commission or continuance of the act enjoined, or to obey and execute such order as the judge has seen proper to make." TEX. R. CIV. P. 687. The court's clerk issues the temporary injunction and delivers it to the sheriff or any constable of the

county of the residence of the person enjoined. TEX. R. CIV. P. 688. The officer executes the injunction "by delivering [it] to the party enjoined." TEX. R. CIV. P. 689.

If the enjoined person disobeys the temporary injunction, he "may be punished by the court or judge . . . as a contempt." TEX. R. CIV. P. 692. The judge has the authority to "cause to be issued an attachment for such person" who is alleged to have disobeyed the injunction and require the person to be arrested and brought before the court or judge. *Id.* Upon proof of disobedience to the injunction, the judge "may commit such person to jail without bail until he purges himself of such contempt, in such manner and form as the . . . judge may direct." *Id.*

**Sandblasters' Motion Does Not Align with these Requirements**

The sandblasters argue that the statute operates unconstitutionally to impair their ability to seek recovery for silica-related injuries. They seek a determination of this question of law and to have the law "declared unconstitutional." Should they prevail on their argument, the relief they seek is to have "the application and enforcement of Section 90.004 . . . immediately and permanently enjoined," thereby prohibiting the dismissal of their claims for failure to file a compliant medical report. Not only do they seek to avoid statutorily mandated dismissal, they further request in their injunctive motion "that the Court hold that Plaintiffs'

16

medical reports are sufficient for Plaintiffs to move forward with their cases as though Section 90.004 was never enacted."

Nowhere in their motion do the sandblasters identify a person or persons to be enjoined. To the extent they seek to prohibit an act, it is the implementation of a statute by the MDL court, as part of its role of managing the MDL docket. Thus, it would seem, the sandblasters are petitioning the judge to enjoin himself from following the laws as written.[8] This request is at odds with the use contemplated of injunction requests in the Rules of Civil Procedure. *Cf.* TEX. R. CIV. P. 687 (stating that, to be sufficient, an injunction "must command the person . . . to whom it is directed to desist and refrain from . . . the act enjoined.") The disconnect appears even more stark when we consider the possibility of contempt. If the judge enjoins himself, is there some contemplation that he could be subject to contempt if an assertion were made that he has not fully complied with his ruling?

In short, the sandblasters are making a legal argument, seeking a declaration that a law is unconstitutional. There are various vehicles available to them to present that argument to the MDL judge—perhaps a motion for summary or declaratory judgment. *See Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 444–46 (Tex. 1994) (affirming relief under Uniform Declaratory Judgments Act to home-

---

[8]     The sandblasters confirmed this intent in a post-submission filing: "Appellants seek injunctive relief *against the MDL Court*."

17

school parents who challenged construction of compulsory school attendance law); TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (West 2015) (Uniform Declaratory Judgments Act); *see also* TEX. R. CIV. P. 166a(c) (providing mechanism to resolve legal issues on showing that, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion.").

Instead of pursuing those avenues, the sandblasters filed a motion for temporary injunction, with the understanding that a denied motion is subject to immediate, interlocutory review. But this vehicle is not capable of providing the relief they seek because, on a conclusion that a statute is unconstitutional, a court does not enjoin itself from enforcing a defective law; it merely declares the law unconstitutional. *Cf. Ryan v. Rosenthal*, 314 S.W.3d 136, 141 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (recognizing narrow availability to litigants of mechanism to enjoin enforcement of *criminal* statutes in civil proceeding but in context of motion to enjoin district attorney, not reviewing court, itself).

Because the motion for temporary injunction fails to meet the content requirements established under the Rules of Civil Procedure and erroneously attempts to have a trial court enjoin itself, we conclude that the MDL court did not err by refusing the motion.

## Conclusion

We affirm the order of the MDL court. All pending motions are denied.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.